WILLIAMS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 77.  Argued October 31, 1969.—Decided November 25, 1969.*
(Also reported in 172 N. W. 2d 31.)

For the plaintiff in error there was a brief by *James D. MacDonald,* attorney, and *Eugene W. Lenartz* and *Brown & Lenartz* of counsel, all of Union Grove, and oral argument by *Mr. MacDonald.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Gerald E. Clickner,* district attorney of Racine county.

CONNOR T. HANSEN, J. The issues presented on review are: (1) Is there sufficient credible evidence to support the verdict of the jury; (2) should a new trial be granted because of inconsistent statements of complaining witnesses in the complaint and at the time of trial; and (3) should a new trial be granted in the interest of justice?

### Sufficiency of Evidence.

The applicable law, on appeal, to test the sufficiency of the evidence to support the jury's verdict is well established:

". . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183.

Earl Alfred Hill, a police officer employed by the Racine Police Department, was off duty on Saturday, June 1, 1968, and working in uniform as a guard at a wedding. He finished his work between 7 and 7:30 p. m., and he removed his hat and gun belt but continued to wear his uniform shirt and uniform pants. On the shirt was a shoulder patch bearing the insignia of the Racine Police Department. There is a conflict in the testimony as to whether he had on his police badge. He drove away from the wedding in his private car and as he approached an intersection he observed fifty or sixty people standing about where two men were engaged in a fight or struggle on the sidewalk, one of whom was the defendant. Upon seeing this Hill stopped his car, got out, and attempted to stop the altercation. There was no other police officer present. Hill was struck first near the scene of the struggle and again after he returned to his car. The second

blow was inflicted through the open window of Hill's car as he sat in the front seat, after which Hill immediately looked around and saw the defendant standing next to the window.

Three witnesses testified on behalf of the state: Hill and two bystanders, Damartha Patterson and John Oatis. The record reflects some inconsistencies in their testimony; however, both Patterson and Oatis testified that the defendant struck the officer and Oatis further testified that the defendant followed the officer to his car and struck him again.

The defendant raises questions as to (1) whether the defendant knew or had reason to believe that Hill was a peace officer at the time of the alleged offense, and (2) whether Hill was "acting in his official capacity."

Hill testified he informed the defendant he was a police officer. Oatis testified that he heard the officer so state. Patterson did not hear the statement. The defendant knew what the uniform of the Racine police officers looked like and at the scene of the incident inquired of Hill as to who had called him. Hill testified at the preliminary examination and at the trial. There are some variances in his testimony on these two occasions. There was, however, sufficient evidence for a jury to reasonably conclude the defendant knew or should have known that Hill was a peace officer.

In raising the issue of "official capacity," our attention is directed to *United States v. Heliczer* (2d Cir. 1967), 373 Fed. 2d 241, 245; certiorari denied, 388 U. S. 917, 87 Sup. Ct. 2133, 18 L. Ed. 2d 1359, where the issue, *inter alia,* was whether federal narcotics' officers had acted within the scope of official duties:

". . . 'Engaged in . . . performance of official duties' is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own. . . ."

Without deciding whether or not this definition of "official capacity" is an appropriate one, it is clear that Hill was within such a rule and not on any "frolic" at the time of the offense.

Hill was a veteran police officer of twenty years, and when he came onto the scene at the intersection he felt the fight had to be broken up "before it got out of hand." It is true that Hill was not on duty when he first saw the fight. However, as soon as he became aware of the situation and took action he was no longer off duty. Hill did what any officer of the law is supposed to do, and attempted to preserve public peace and order.[2] It was certainly no "personal frolic" for him to stop his car, step into the middle of a crowd and on his own, attempt to break up a fight. There is, therefore, no merit in defendant's assertion that Hill was not acting in his official capacity when the offense took place.

The trial court properly instructed the jury on all issues including the elements of the alleged offense and the jury found the defendant guilty. The jury performed its function and although there are inconsistencies in the testimony, we are of the opinion that the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the guilt of the defendant beyond a reasonable doubt.

### Criminal Complaint Vitiated.

Defendant argues that Hill's statement made during the preliminary hearing of Harper (the other man in-

---

[2] Sec. 939.22, Stats., "**Words and phrases defined.** In the criminal code, the following words and phrases have the designated meanings unless the context of a specific section manifestly requires a different construction: . . .

"(22) 'Peace officer' means any person vested by law with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes."

volved in the altercation), wherein Hill concluded they might have stopped if Hill had been recognized as a police officer, vitiates the complaint signed by Hill on June 3, 1968. Defendant goes further and contends the trial court should have granted the motion to dismiss at the close of the state's case.

Hill's opinion is not conclusive of defendant's lack of knowledge that Hill was a police officer. In addition, what defendant is challenging is the personal jurisdiction of the trial court because of the invalidity of the complaint. However, it is well settled that such a defect is waived if not raised before pleading to the information.[3] *State ex rel. La Follette v. Moser* (1966), 30 Wis. 2d 56, 139 N. W. 2d 632. In this case a preliminary hearing was demanded and conducted. No motion to dismiss the complaint was made to the magistrate and defendant was bound over for trial. An information was filed on July 29, 1968. On that date the defendant was arraigned and a plea of not guilty was entered. No motion to dismiss the criminal complaint was made to the trial court prior to the entry of the plea and defendant made no such motion until after the state had presented its case at the trial. It is clear that any objection to the complaint was waived.

---

[3] Sec. 955.09, Stats., "Pleas and motions before trial; waiver of jeopardy. . . .

"(3) Defenses and objections based on defects in the institution of the proceedings, insufficiency of the information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence (except confessions) must be raised before trial by motion or be deemed waived. But the court may, in its discretion, entertain such motion at a later stage of the trial, in which case the defendant waives any jeopardy that may have attached. A motion to suppress evidence shall be so entertained, with waiver of jeopardy, when it appears that defendant is surprised by the state's possession of such evidence."

*New Trial in Interest of Justice.*

Under the provisions of sec. 251.09, Stats., this court can order a new trial if "it is probable that justice has for any reason miscarried." The trial took one day and the case was not given to the jury until late in the evening. After a deliberation of less than thirty-nine minutes they returned a finding of guilty against the defendant. Defendant argues that the nature of the case and conflict in testimony would seem to warrant a longer deliberation. However, neither this fact, nor anything else that transpired during the trial indicates defendant was denied a fair trial or that a new trial would probably result in his acquittal. *See Lock v. State, supra,* page 118.

*By the Court.*—Judgment affirmed.