STATE of Wisconsin, Plaintiff-Appellant,†

v.

Brian J. COERPER, Defendant-Respondent.††

Court of Appeals

*No. 94–2791–CR. Submitted on briefs February 20, 1995.—Decided March 14, 1995.*

(Also reported in 531 N.W.2d 614.)

†Petitions to review granted.
††Petitions to cross-review granted.

For the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, *Vincent R. Biskupic*, district attorney, and *Lori A. Eidemanis,* assistant district attorney.

For the defendant-respondent, the cause was submitted on the brief of *Leonard D. Kachinsky* of *Kachinsky Law Offices* of Neenah.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. The State appeals an order granting Brian Coerper's motion to suppress statements he made prior to a criminal complaint charging him with first-degree reckless homicide, in violation of § 940.02, STATS. The State contends that the statements did not violate Coerper's constitutional rights and therefore are admissible. Because we conclude that Coerper's constitutional rights were not violated as to the communications prior to his arrest and consequent incarceration on April 15, 1994, we reverse the trial court's suppression of such evidence. However, we conclude that Coerper's rights were violated after his incarceration on April 15, and thus affirm that portion of the order.

On January 28, 1993, Appleton police officers were dispatched to Cynthia Boche's apartment after Coerper had reported finding Boche's body behind the door of the apartment when he went to visit her. At the time,

569

Coerper was serving a sentence in the Outagamie County Jail for burglary with Huber work-release privileges.[1] An autopsy was later performed, revealing that Boche had died as a result of manual strangulation.

On February 3, 1993, a public defender notified the district attorney that he was providing legal representation to Coerper, who was being investigated as a suspect in Boche's death. On March 15, 1993, Coerper was released from jail on the burglary charge. In an August 1993 letter, Coerper's attorney notified an Appleton Police Department investigator that he represented Coerper and counseled him as to his right against self-incrimination and not to discuss anything related to the Boche homicide investigation without his attorney present.

On January 3, 1994, investigators interviewed Jacqueline VandenWyngaard, a former friend of Coerper's, and advised her that Coerper was a suspect in Boche's homicide. They solicited her cooperation in re-initiating her friendship with Coerper for the purpose of assisting the police in gathering evidence for the investigation. She agreed. Subsequently, the investigators met with VandenWyngaard to install electronic recording devices at her residence. On January 27, 1994, Coerper visited VandenWyngaard at her residence and engaged in conversation, which was recorded.

On April 15, 1994, Coerper was incarcerated on criminal charges not related to the Boche homicide and a probation hold. While incarcerated, Coerper

---

[1] Pursuant to § 303.08, STATS., an inmate of a county jail may be granted the privilege of leaving jail to work, seek employment, perform community service, attend an educational institution or for medical treatment.

exchanged letters and telephone calls with VandenWyngaard.

On May 2, 1994, Coerper, while still in custody, was charged with the Boche homicide. Coerper moved to suppress all statements made to VandenWyngaard, based on grounds that the statements were involuntary and violated Coerper's right to counsel. The trial court granted Coerper's motion in a written decision. The State appeals this order concerning the communications made between January 3, 1994, and May 1, 1994. The State concedes that VandenWyngaard acted as a police agent during that time period.

■

This court upholds a trial court's factual findings unless they are contrary to the great weight and clear preponderance of the evidence. *State v. Turner*, 136 Wis. 2d 333, 343-44, 401 N.W.2d 827, 832 (1987).[2] However, application of constitutional principles to evidentiary and historical facts presents a question of law that we review independently of the trial court's determinations. *Id.* at 344, 401 N.W.2d at 832.

The trial court held that because Coerper was represented by counsel throughout the pertinent time period, his right to be free from interrogation continues until he either waives that right or voluntarily gives information to a willful listener. The State contends that Coerper's right to counsel was not abrogated because Coerper was not subjected to official interrogation as required under *Miranda v. Arizona,* 384 U.S. 436 (1966).

[2] Findings of fact will not be set aside unless "clearly erroneous," pursuant to § 805.17(2), STATS. These two standards are essentially the same. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

A criminal defendant has two separate rights to counsel when interrogated by police. One, derived from *Miranda*, is based on the Fifth Amendment privilege against self-incrimination.[3] *Illinois v. Perkins,* 496 U.S. 292, 296 (1990). The second right is a guarantee of the assistance of counsel stemming from the Sixth Amendment to the United States Constitution. *McNeil v. Wisconsin,* 501 U.S. 171, 175 (1991). The Sixth Amendment right to counsel is offense specific and is not triggered until there is a formal commencement of adversarial proceedings. *Id.* at 175. Further, it does not attach to uncharged crimes, thus if incriminating statements are made pertaining to crimes other than the ones charged, Sixth Amendment rights are not implicated. *State v. Lale,* 141 Wis. 2d 480, 489, 415 N.W.2d 847, 851 (Ct. App. 1987) (adopting *Maine v. Moulton,* 474 U.S. 159, 180 n.16 (1985)).

On the other hand, the *Miranda* right to counsel is not offense specific, but applies when a criminal suspect is subjected to custodial interrogation. *Id.* at 444. In *Edwards v. Arizona,* 451 U.S. 477, 484-85 (1981), the Supreme Court further developed *Miranda* by holding that when an accused has invoked a right to counsel during custodial interrogation, he cannot be subjected to further police interrogation unless counsel

---

[3] The *Miranda* opinion is widely recognized as creating prophylactic rules to permit an accused the exercise of the privilege against self-incrimination. *See, e.g., North Carolina v. Butler,* 441 U.S. 369, 374 (1979). "The *Miranda* rule is not, nor did it ever claim to be, a dictate of the Fifth Amendment itself." *Duckworth v. Eagan,* 492 U.S. 195, 209 (1989) (O'Connor, J., concurring).

572

is provided or he initiates further communication with the police.

Here, Coerper was arrested on unrelated criminal charges on April 15, 1994, and charged with Boche's murder on May 2, 1994. Therefore, the Sixth Amendment right to counsel does not attach until May 2 because this right is offense specific and Coerper had not been charged with Boche's homicide. *See McNeil,* 501 U.S. at 175. Consequently, the trial court erred by suppressing Coerper's statements premised on the Sixth Amendment. Further, Coerper's statements to VandenWyngaard from January until Coerper's arrest on April 15 did not violate Coerper's *Miranda* rights because he was not yet in custody. *See id.* at 444. Because noncustodial interrogation does not trigger *Miranda* rights, the trial court erred by excluding Coerper's statements made before April 15.

Consequently, we must analyze the time period after April 15 to discern whether Coerper's communication with VandenWyngaard was subject to *Miranda*. *Miranda* rights concern the interrogation of individuals in a police-dominated atmosphere. *Id.* at 445. There are two requirements for invocation of an accused's *Miranda* rights: custody and interrogation. *Id.* at 444. Here, from April 15 through May 2, Coerper was clearly in custody because he was incarcerated on other charges. Therefore, we examine whether his communications with VandenWyngaard constitute "interrogation."

The term "interrogation" refers to both express questioning and its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980). "That is to

say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (footnotes omitted). Although the perceptions of the suspect, not the police, are the focal point in this analysis, the interrogation cannot extend to words or actions police officers should have known were reasonably likely to elicit an incriminating response. *Id.* at 301-02.

■

The Supreme Court further clarified the definition of interrogation: "[C]ustodial interrogation for purposes of *Miranda* includes both express questioning and words or actions that, given the officer's knowledge of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to 'have . . . the force of a question on the accused,' and therefore be reasonably likely to elicit an incriminating response." *Pennsylvania v. Muniz,* 496 U.S. 582, 601 (1990) (citation omitted) (citing *Harryman v. Estelle,* 616 F.2d 870, 874 (5th Cir. 1980)). When determining if police conduct is the functional equivalent of interrogation, the objective underlying *Miranda* and *Edwards* must be examined, that is, "preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." *Arizona v. Mauro,* 481 U.S. 520, 529-30 (1987).

During his incarceration, VandenWyngaard wrote letters to Coerper, including one that states in part:

> All you have ever said over and over to me is that you didn't do it and the paper says you told some

guy how you did it? You were never comfortable talking about it and here I find out you were telling some guy exactly how you did it? *But Brian, did you do it?*[ ] Do you remember telling some guy how you did it or were you all drunk or what??? (Emphasis added.)

This letter is the undisputed product of the police-fostered friendship between VandenWyngaard and Coerper. These direct questions from an agent of the police subjected Coerper to tactics the police knew or reasonably should have known were likely to elicit an incriminating response. Coerper's letters reflect his belief that VandenWyngaard was his friend, leaving him susceptible to deceptive police tactics. These tactics and questioning undermine *Miranda*'s purpose, averting coercive police conduct that elicit incriminating responses. Thus, we conclude that VandenWyngaard's letter, in relation to the surrounding circumstances, constitutes "interrogation" under *Miranda*.

In sum, we conclude that the State did not violate Coerper's *Miranda* or Sixth Amendment rights when VandenWyngaard communicated with Coerper prior to his arrest and subsequent incarceration on April 15, 1994. From April 15, 1994, until the issuance of the homicide complaint on May 2, 1994, Coerper's statements were directly elicited by an agent of the police and therefore are inadmissible because they were obtained in violation of Coerper's *Miranda* right to counsel.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.