STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Brian J. COERPER, Defendant-Respondent-Cross Petitioner.†

Supreme Court

*No. 94–2791–CR. Oral argument November 30, 1995.—Decided February 20, 1996.*

(Also reported in 544 N.W.2d 423.)

†Motion for reconsideration denied April 9, 1996.

216

For the plaintiff-appellant-petitioner the cause was argued by *Sharon Ruhly*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-respondent-cross petitioner there were briefs by *Leonard D. Kachinsky* and *Kachinsky Law Offices*, Neenah and oral argument by *Leonard D. Kachinsky*.

ROLAND B. DAY, C.J. This is a review of a decision of the court of appeals, *State v. Coerper*, 192 Wis. 2d 566, 531 N.W.2d 614 (Ct. App. 1995), affirming in part and reversing in part an order of the circuit court for Outagamie County, Dennis Luebke, Judge. The circuit court had granted a motion of defendant Brian Coerper (Coerper) suppressing statements Mr. Coerper made to an informant prior to the issuance of a criminal complaint charging him with first-degree reckless homicide contrary to Wis. Stat. § 940.02 (1993-94). The court of appeals concluded that statements Coerper made prior to his incarceration on April 15, 1994, on a separate matter were not obtained in violation of Coerper's rights and therefore admissible, and reversed the portion of the circuit court order suppressing those statements; however, the court of appeals also concluded that statements Coerper made after his incarceration were obtained in violation of his rights, and the court of appeals affirmed the portion of the circuit court's order suppressing these statements. Because we conclude that there is no evidence that Coerper ever invoked his right to counsel, none of Coerper's statements were taken in violation of his rights. We thus reverse the portion of the court of appeals decision suppressing Coerper's statements made after April 15, 1994, and affirm the portion of the decision reversing the trial court's suppression order.

During January of 1993, Coerper was serving a sentence for burglary in the Outagamie County Jail with Huber work-release privileges pursuant to Wis. Stat. § 303.08 (1993-94).[1] On the evening of January 28, 1993, Coerper informed the Appleton police that he

---

[1] Section 303.08 provides in part:

**303.08 "Huber Law"; employment of county jail prisoners. (1)** Any person sentenced to a county jail for crime . . . may be

had gone to visit a friend of his, Cynthia Jo Boche (Boche), and had discovered her body behind the door of her apartment. A later autopsy revealed that Boche had been manually strangled to death.

On February 3, and 4, 1993, while Coerper was still in jail on the burglary conviction, a public defender, Eugene Bartman (Bartman), wrote two letters to the Outagamie County district attorney. The letters stated that Coerper was represented by the public defender's office. Attorney Bartman noted in the letters that he understood Coerper to be under investigation for Boche's murder.

Coerper was released from jail on the burglary charge on March 15, 1993. On August 18, 1993, Attorney Bartman wrote a letter to an investigator at the Appleton Police Department, Randall Cook (Cook). The letter stated in part:

> I also wish to remind you that Brian Coerper is represented by counsel. Brian is not to be questioned by any law enforcement officer, or anyone acting on behalf of law enforcement, with respect to any matter related to your investigation into the death of Cynthia Jo Boche. Brian has been instructed to invoke his right to counsel and his right against self-incrimination to not discuss anything related to the pending investigation in the absence of his attorney. Any future contact with Brian should be made through me.
>
> I assume you will take responsibility for notifying any other law enforcement officer who may be mak-

granted the privilege of leaving the jail during necessary and reasonable hours for any of the following purposes:

. . .

　(b)　Working at employment;

. . . .

ing contact with Brian in the future that Brian is represented by counsel and that his right to remain silent and his right to counsel have been invoked.

On January 3, 1994, Mr. Cook and another investigator interviewed Jacqueline VandenWyngaard, a former friend of Coerper's. The investigators asked Ms. VandenWyngaard to reestablish her friendship with Coerper in order to gather evidence from Coerper. Ms. VandenWyngaard agreed to assist the police. On January 27, 1994, Coerper visited Ms. VandenWyngaard at her home and spoke with her. Ms. VandenWyngaard recorded the conversation.

On April 15, 1994, Coerper was again jailed on a theft charge and placed on a probation hold. While in jail, he exchanged letters with Ms. VandenWyngaard. On May 2, 1994, while still in jail, Coerper was charged with first-degree reckless homicide in the death of Boche. Coerper and Ms. VandenWyngaard continued their correspondence after the filing of the charge. On appeal, the State has conceded that Ms. VandenWyngaard was an agent of the police from January 3, 1994 to May 1, 1994.

Coerper moved to suppress all statements he made to Ms. VandenWyngaard after January 3, 1994. The circuit court granted Coerper's motion to suppress his statements to Ms. VandenWyngaard. The court of appeals reversed the portion of the circuit court's order suppressing the statements made before Coerper's incarceration on April 15, 1994, and affirmed the portion of the order suppressing the statements made after April 15, 1994.

On review of an order granting suppression, we are bound by the circuit court's findings of historical fact unless they are contrary to the great weight and

clear preponderance of the evidence. *State v. Kramar*, 149 Wis. 2d 767, 784, 440 N.W.2d 317 (1989). Whether the defendant's *Miranda*[2] rights were violated is a constitutional fact which this court determines without deference to lower courts. *Kramar*, 149 Wis. 2d at 784.

The United States Supreme Court has identified two sources of the "right to counsel": the Fifth[3] and Sixth[4] Amendments to the Constitution. *See McNeil v. Wisconsin*, 501 U.S. 171, 175-77 (1991). The Sixth Amendment right to counsel and its protections are offense-specific, and do not attach until the commencement of a prosecution. *Id.* at 175; *see also United States v. Gouveia*, 467 U.S. 180, 188 (1984); *State v. Hanson*, 136 Wis. 2d 195, 210, 401 N.W.2d 771 (1987). The Sixth Amendment right to counsel is thus not at issue in the instant case, because the parties dispute only those statements made before May 2, 1994, when Coerper was charged with Boche's murder.

Coerper argues, however, that the so-called "Fifth Amendment" or "*Miranda-Edwards*" right to counsel bars the use of the statements obtained during the investigation of Boche's murder. Cases of the United States Supreme Court have derived a right to counsel from the Fifth Amendment in order to protect against

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] The Fifth Amendment provides in part:

> No person . . . shall be compelled in any criminal case to be a witness against himself.

U.S. Const. amend. V.

[4] The Sixth Amendment provides in part:

> In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

self-incrimination under the pressures of custodial interrogation. *See Miranda*, 384 U.S. at 467, 471. Once a suspect invokes the right, the police may not instigate further interrogation unless the suspect's counsel is present. *Id.* at 474; *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990). The *Miranda-Edwards* right to counsel, unlike the Sixth Amendment right, is not offense-specific: once the right is invoked for a particular offense, the police may not approach the suspect for interrogation regarding any other offense without counsel present. *McNeil*, 501 U.S. at 177 (citing *Arizona v. Roberson*, 486 U.S. 675 (1988)).

However, the *Miranda-Edwards* right to counsel must be invoked in order to effect the *Edwards* prohibition against further interrogation by the police. *See Edwards*, 451 U.S. at 484.

> The rule of [*Edwards*] applies only when the suspect "ha[s] *expressed*" his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*. . . . It requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*

*McNeil*, 501 U.S. at 178 (emphasis in original) (quoting *Edwards*, 451 U.S. at 484). The invocation of the right to counsel must be unambiguous: The suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 114 S. Ct. 2350, 2355 (1994).

Further, this court has held that the *Miranda-Edwards* right to counsel must be personally invoked by the subject. In *State v. Hanson*, 136 Wis. 2d 195, 213, 401 N.W.2d 771 (1987), a suspect, Hanson, had been injured during the course of a murder and was placed in a hospital room. Hanson's parents contacted an attorney, who agreed to represent their son. *Id.* at 203. The attorney informed police officers that he represented Hanson; upon being told that Hanson was not allowed visitors, the attorney provided the police with a written request that Hanson not be interrogated without the attorney present. *Id.* at 203-04. Hanson never requested an attorney. The following morning, police investigators spoke to Hanson. Hanson waived his *Miranda* rights and gave a statement to the investigators. *Id.* at 205-06.

This court held that the police interrogation did not violate the *Miranda-Edwards* right to counsel, as well as the right to counsel under Article I, § 8(1) of the Wisconsin Constitution.[5] *See Hanson*, 136 Wis. 2d at 211-13. The court stated:

> Since the right to counsel and the right to remain silent are given by the constitution to the defendant, he alone can exercise those rights. Neither his family nor his attorney are threatened with accusations, nor do they have the defendant's knowledge of the case, including the defendant's knowledge of his own guilt or innocence, nor are they subject to the pain of the defendant's possibly guilty conscience. Therefore, no one but the accused can make the decision to make a statement to the

---

[5] Article I, § 8(1) provides in part:

(1) No person . . . may be compelled in any criminal case to be a witness against himself or herself.

Wis. Const. art. I, § 8(1).

police or to ask for the assistance of counsel in making his decision.

*Id.* at 213. The court also noted that the United States Supreme Court had reached a similar result in *Moran v. Burbine*, 475 U.S. 412 (1986). *See Hanson*, 136 Wis. 2d at 208-11.

This principle, that the *Miranda-Edwards* right must be personally invoked, dictates our result in the present case. Our examination of the record shows no evidence that Coerper *ever* personally stated a desire for the assistance of counsel in dealing with custodial interrogation. The only such request came in the August 18, 1993 letter from Attorney Bartman, but under *Hanson* the request of an attorney does not constitute an invocation of a suspect's *Miranda-Edwards* right to counsel. In his briefs and at oral argument before this court, Coerper's counsel concedes that the record contains no evidence of a personal invocation, but asks this court to infer such an invocation from the fact that Coerper retained Attorney Bartman. We decline making such an inference in light of the clear requirement, stated by both this court and by the United States Supreme Court, that an invocation of the right to counsel by a suspect must be unambiguous. Simply retaining counsel is not an unequivocal statement that the suspect wishes to deal with the police only in the presence of counsel.

Because Coerper never personally invoked the right to counsel, the police were free to conduct the investigation through Ms. VandenWyngaard that led to the statements at issue in this case. We therefore

reverse that portion of the court of appeals decision which affirmed the circuit court's suppression order.[6]

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause remanded for further proceedings not inconsistent with this opinion.

---

[6] Having resolved this case on the grounds that Coerper never personally invoked his *Miranda-Edwards* right to counsel, we do not reach the issue of whether a suspect, having made a proper invocation, can be the subject of a police-initiated undercover investigation. *See Illinois v. Perkins*, 496 U.S. 292, 300-03 (1990) (Brennan, J., concurring).