State of Wisconsin, Plaintiff-Respondent,

v.

Willie B. Cole, Defendant-Appellant.

Court of Appeals

*No. 2007AP2472–CR. Submitted on briefs July 2, 2008.
—Decided November 13, 2008.*

2008 WI App 178

(Also reported in 762 N.W.2d 711.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Scott A. Szabrowicz*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Stephen W. Kleinmaier*, asst. attorney general, and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J., Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. Willie Cole appeals a judgment of conviction for substantial battery and two counts of intimidation of a witness, challenging the court's denial of two suppression motions. First, he contends the circuit court erred in denying his motion

to suppress a letter that he wrote, which he mistakenly addressed to a residence that happened to be the home of a law enforcement officer. He asserts the officer was acting in her official capacity when she opened the letter and the warrantless search violated the Fourth Amendment guarantee against unreasonable searches. We agree with the circuit court that the evidence establishes that the officer acted in a private capacity, not in her official capacity, when she opened the letter. Therefore there was no Fourth Amendment violation. Accordingly, we affirm the circuit court's ruling denying Cole's motion to suppress evidence.

¶ 2. Second, Cole contends the circuit court erred in denying his motion to suppress statements made during a custodial interrogation initiated by the police with respect to the intimidation of witness charges. He asserts he had invoked his Fifth Amendment/*Miranda* right to counsel in a previous custodial interview when he was arrested on the battery charge and had remained continuously in custody. According to Cole, the court impermissibly shifted the State's burden of proof on this issue to him. We agree with Cole that the circuit court erred in its allocation of the burden of proof. We conclude that, when a defendant gives the State timely notice that he or she claims that a custodial statement is inadmissible because of a prior invocation of the Fifth Amendment/*Miranda* right to counsel, the State has the burden of proving that the defendant previously waived that right. We also conclude a remand is necessary for the circuit court to decide this motion with the correct burden of proof. Accordingly, we reverse the court's ruling on this motion and we remand for further proceedings consistent with this opinion.

¶ 3. Because we reverse the circuit court's ruling on the motion to suppress Cole's statement and remand, we conditionally reverse the judgment of convic-

80

tion, with instructions to the court set forth in paragraphs 43 and 44 of this opinion.

## BACKGROUND

¶ 4. In February 2006, Cole was arrested for battery against his wife. He was charged with substantial battery in violation of WIS. STAT. § 940.19(2) (2005–06)[1] and ordered to have no contact with his wife while the charge was pending.

¶ 5. While awaiting trial, Cole made several phone calls and sent several letters to family members, instructing them to prevent his wife from appearing at his trial. One of those letters was written to his daughter, Charnaye Cole, who apparently lived at 3431 North 44th Street. However, the envelope to this letter, while containing Charnaye Cole's name, was addressed to 3431 North *49th* Street. That was the residence of Mariellen Kostopulos, a Milwaukee County Sheriff's Department detective. Detective Kostopulos opened the letter and began reading it. Subsequently she gave the letter to the district attorney prosecuting the battery case against Cole.

¶ 6. Milwaukee Police Department Officer Adam Riley was assigned to investigate the letters and phone calls. He went to interview Cole on April 24, 2006, at the Milwaukee House of Corrections, where Cole was in custody pending his trial on the substantial battery charge. Officer Riley told Cole he was there regarding the letter Cole had sent to his daughter. Officer Riley advised Cole of his *Miranda* rights[2] and Cole said he understood his rights, agreed to answer questions, and

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

signed a statement to that effect. Cole answered the officer's questions about the letter. The officer did not ask Cole any questions about the battery case, but Cole on his own started to talk about the facts of that case. The officer summarized in a handwritten statement what Cole said, both about the letter and the battery case. After the officer read the statement to Cole, Cole looked the statement over and signed it.

¶ 7. Cole was subsequently charged with two counts of intimidation of a witness in violation of WIS. STAT. § 940.43(7). That case was joined with the substantial battery case.

¶ 8. Cole filed two suppression motions. In the first motion he sought to suppress his letter to his daughter on the ground that, because Detective Kostopulos opened the letter without a warrant, it was an unlawful search under the Fourth Amendment to the United States Constitution. In the second motion he sought to suppress the statement he made to Officer Riley. Cole asserted that he had invoked his *Miranda* right to counsel during his arrest for battery in February when Officer Angela Gonzalez attempted to interview him and that he was assigned an attorney. Therefore, Cole argued, Officer Riley's subsequent questioning of him without counsel present violated his rights under the Fifth Amendment to the United States Constitution.

¶ 9. After an evidentiary hearing, the circuit court denied both motions. It found that Detective Kostopulos opened the letter in her private capacity as a citizen and not in her official capacity as a detective. Therefore, the court concluded, the Fourth Amendment protection against unreasonable searches and seizures did not apply and no warrant was required. The court denied Cole's motion to suppress his statement to Officer Riley because it found Cole had not invoked the Fifth

Amendment/*Miranda* right to counsel when he was arrested on the battery charge. Thereafter, Cole pleaded guilty to one count of substantial battery and two counts of intimidating a witness.

## DISCUSSION

■

¶ 10. On appeal, Cole challenges the circuit court's denial of both motions. When we review a circuit court's disposition of a motion to suppress evidence on constitutional grounds, we accept the court's findings of fact unless they are clearly erroneous, and we review de novo the application of constitutional principles to the facts. *See State v. Dagnall*, 2000 WI 82, ¶¶ 26–27, 236 Wis. 2d 339, 612 N.W.2d 680.

I. Motion to Suppress Cole's Letter

¶ 11. Cole contends the court erred in denying his motion to suppress his letter because the evidence shows that Detective Kostopulos was acting in her official capacity when she opened the letter.

■■■

¶ 12. The Fourth Amendment's protection against unreasonable searches and seizures applies only to government action, not to private searches. *State v. Payano-Roman*, 2006 WI 47, ¶ 17, 290 Wis. 2d 380, 714 N.W.2d 548. "Once the State raises the issue, asserting that a search is a private search, the defendant has the burden of proving by a preponderance of the evidence that government involvement in a search or seizure brought it within the protections of the Fourth Amendment." *Id.*, ¶ 23.[3] In deciding whether a

---

[3] In his reply brief, Cole disagrees with the State's conten-

search is a private search or a government search, the court is to consider the totality of the circumstances. *Id.*, ¶ 21.

■■

¶ 13. There appears to be no Wisconsin case addressing the issue when an off-duty law enforcement officer acts in a private capacity rather than as a government agent for purposes of the Fourth Amendment. However, there appears to be general agreement in other jurisdictions that have considered the issue that "[government] involvement [in a search] is not measured by the primary occupation of the actor, but by the Capacity [sic] in which he acts at the time in question"; therefore, an off-duty officer acting in a private capacity in making a search does not implicate the Fourth Amendment. *State v. Pearson*, 514 P.2d 884, 886 (Or. Ct. App. 1973). *Accord United States v. Ginglen*, 467 F.3d 1071, 1074–76 (7th Cir. 2006); *United States v. Couch*, 378 F. Supp. 2d 50, 58 (N.D.N.Y 2005); *State v. Walker*, 459 N.W.2d 527, 533 (Neb. 1990); *State v. Castillo*, 697 P.2d 1219, 1221 (Idaho Ct. App. 1985); *People v. Luetkemeyer*, 393 N.E.2d 117, 120 (Ill. App. Ct.

tion that he has the burden to prove that Detective Kostopulos was acting in her official capacity when she opened the letter. However, he does not explain why the statement of law on this point from *State v. Payano-Roman*, 2006 WI 47, ¶ 23, 290 Wis. 2d 380, 714 N.W.2d 548, cited by the State, is not controlling. Instead Cole cites to *State v. Pallone*, 2000 WI 77, ¶ 29, 236 Wis. 2d 162, 613 N.W.2d 568, for the proposition that the "State bears the burden of proving that a warrantless search falls under one of the established exceptions [to the requirement of a warrant]." *Pallone* does not address the threshold issue of whether the Fourth Amendment is applicable at all, which, in this case, turns on whether the search was a government search or a private search. *Payano-Roman*, 290 Wis. 2d 380, ¶ 23, is controlling as to the burden of proof on this issue.

1979); *State v. Woods*, 790 S.W.2d 253, 257 (Mo. Ct. App. 1990); *State v. Andrews* 637 A.2d 787, 790–91 (Conn. App. Ct. 1994); *People v. Wolder*, 84 Cal. Rptr. 788, 793 (Cal. Ct. App. 1970). We agree with this conclusion. We therefore examine the totality of the circumstances, *see Payano-Roman*, 290 Wis. 2d 380, ¶ 21, to determine whether Detective Kostopulos was acting in her private capacity as a citizen or in her official capacity as a detective for the sheriff's department when she opened Cole's letter.

¶ 14. At the suppression hearing, Detective Kostopulos testified that the letter from Cole was among several letters delivered on that particular day to the mail slot in the wall of her residence. After returning from work that day she began opening the mail. Because she assumed Cole's letter was for her, she did not check to see the name or address on the envelope before opening it and beginning to read. When she read something about contacting someone not to appear in court, she realized the letter was not intended for her and that it concerned intimidation of a witness. At that point she turned over the envelope and saw that the sender was Willie Cole. When she returned to work on Monday morning she entered Willie Cole's name into the CCAP database and found that he had a court date scheduled. She contacted the district attorney prosecuting the case, gave that attorney the letter, and did nothing further on the matter except to speak with Officer Riley when he contacted her.

¶ 15. Defense counsel elicited from Officer Riley testimony that contradicted Detective Kostopulos's testimony about when she saw Charnaye's and Cole's names on the envelope. According to Officer Riley, when he interviewed the detective by telephone as part of his investigation, she told him that, prior to opening the

85

letter, she noticed that the letter was addressed to Charnaye Cole, the sender was Willie Cole, and she did not know either person. As for Detective Kostopulos's lack of involvement in the matter after she turned the letter over to the district attorney, Officer Riley's testimony was consistent with that of the detective. He also testified that he did not receive a written report from her.

¶ 16. The circuit court concluded that, because Detective Kostopulos was acting in a private capacity when she opened and read the letter, it was unnecessary to decide whether she knew the letter was not meant for her before opening the envelope.

¶ 17. Cole contends the circuit court erred in concluding that it did not matter whether Detective Kostopulos knew she was not the intended recipient of the letter before she opened it. According to Cole, if she knew that the letter was addressed to Charnaye Cole and the sender was Willie Cole before she opened the letter—which Cole contends is the case—then in opening the letter the detective was acting as a law enforcement officer.

¶ 18. We conclude it is not necessary to remand to the circuit court for a finding on whether Detective Kostopulos saw that the letter was intended for Charnaye Cole and that Willie Cole was the sender before she opened it.[4] We will assume the detective did see the front of the envelope before she opened it and read the letter. There is nothing on the face of the envelope—

---

[4] We do not agree with Cole's apparent assumption that he is entitled to suppression of the letter simply because the court did not make a finding on this point. If a finding were essential to a resolution of this appeal, we would remand to the circuit court to make a finding and the proper outcome of the motion would depend on that finding.

addressed to "Ms. Charnaye Cole, 3431 North 49th Street, Milwaukee, Wisconsin," with a return address of "Willie Cole, 8885 South 68th Street, Franklin, Wisconsin"—that suggests that the contents of the envelope concerned a criminal matter. There is also no evidence in the record of the motion hearing from which a fact-finder might reasonably infer that Detective Kostopulos had reason to suspect, upon seeing those names and addresses on the envelope, that the contents might concern a criminal matter.

¶ 19. Considering the totality of the circumstances, we conclude that Detective Kostopulos was acting in her private capacity, not her official capacity, when she opened Cole's letter. The activity she was engaged in when she opened Cole's letter—opening mail that had been delivered to her home—was that of a private citizen. Even given our assumption that she saw the front of the envelope before she opened it and so knew it was not intended for her, she did not know Willie Cole or Charnaye Cole or have reason to suspect that she might discover criminal activity by opening the letter. There is no evidence she was aware of any pending case or investigation relating to Cole when she opened the letter.

¶ 20. Cole argues that the fact that Detective Kostopulos did not turn the letter over to the district attorney for two days after she opened the letter shows that she was acting in her official capacity. This argument is a reply to the State's contention, based on cases from other states, that turning over the discovered evidence to another officer indicates the off-duty officer was acting in a private capacity when making the discovery. *See, e.g., Castillo*, 697 P.2d at 1221; *Pearson*, 514 P.2d at 886–87; *Wolder*, 84 Cal. Rptr. at 793–94.

However, neither Cole nor the State explains why in the circumstances of this case it is relevant what Detective Kostopulos did after she read Cole's letter. We see nothing in the evidence of what Detective Kostopulos did after opening and reading the letter to change our view that during that act she was simply opening and reading mail sent to her residence, with no reason to suspect criminal activity, and was therefore not acting in her capacity as a law enforcement officer.

¶ 21. We also reject Cole's argument that *Williams v. State*, 45 Wis. 2d 44, 172 N.W.2d 31 (1969), supports his position. That case was not a Fourth Amendment case, but instead concerned a charge of battery to a police officer who was off duty when he tried to break up a fight. The issue the court addressed was whether the officer was "acting within the scope of what [he was] employed to do" or "engaging in a personal frolic of his own" when he broke up the fight.[5] *Id.* at 47 (citation omitted). The court concluded that, once the officer "became aware of the situation and took action he was no longer offduty[sic]" and he was doing "what any officer of the law is supposed to do . . . attempt[ing] to preserve public peace and order." *Id.* at 48. Cole asserts

---

[5] WISCONSIN STAT. § 940.205 (1967–68), the statute at issue in *Williams v. State*, 45 Wis. 2d 44, 172 N.W.2d 31 (1969), provided:

> Battery to peace officers; firemen. Whoever causes bodily harm to a peace officer, as defined in s. 939.22(22), or fireman, acting in his official capacity and the person knows or has reason to know that the victim is a peace officer or fireman, by an act done with intent to cause bodily harm to the peace officer or fireman, without consent of the person so injured, may be imprisoned not more than 2 years.

This statute was repealed by 1977 Wis. Laws, ch. 173, § 16, and the current version with some modification is found in WIS. STAT. § 940.20(2) (2005–06).

that this reasoning applies here because Detective Kostopulos "became aware of the situation and took action" by opening the letter. We disagree. There is no evidence Detective Kostopulos knew the letter concerned a criminal matter before opening it.

¶ 22. We conclude that Detective Kostopulos was acting in a private capacity and not in an official capacity when she opened Cole's letter and read it. The Fourth Amendment is therefore not applicable and the circuit court properly denied Cole's motion to suppress the letter.[6]

## II. Motion to Suppress Cole's Statement

¶ 23. Cole contends there was evidence to support his assertion that he invoked his Fifth Amendment/ *Miranda* right to counsel when he was arrested on the battery charge and no contrary evidence. Because the State has the burden of proving he validly waived his *Miranda* rights, Cole asserts, the court erred in determining he did not invoke his Fifth Amendment/ *Miranda* right to counsel at that time. According to Cole, because he did invoke his Fifth Amendment/ *Miranda* right to counsel at that time and because he remained in custody thereafter, Officer Riley was precluded from questioning him on any matter without his attorney present. Cole does not argue that, apart from his prior invocation of his Fifth Amendment/*Miranda* right to counsel, the waiver of his rights obtained by Officer Riley was invalid.

¶ 24. The State responds that, because the statement sought to be admitted was the statement made to

---

[6] We note that this case concerns an off-duty officer and we therefore do not address whether an on-duty officer acts in an official capacity in all circumstances.

Officer Riley, the initial question is whether the State made a prima facie case that Cole waived his *Miranda* rights in that interview. According to the State, it did make this showing, and the burden was then on Cole to produce evidence showing the waiver was nonetheless invalid because he had invoked his Fifth Amendment/ *Miranda* right to counsel when arrested on the battery charge. The State asserts that the circuit court properly concluded that Cole did not meet this burden.

¶ 25. *Miranda v.* Arizona, 384 U.S. 436 (1966), established the right to have counsel present during a custodial interrogation as a safeguard against the relinquishment of the Fifth Amendment privilege against self-incrimination. *Dagnall*, 236 Wis. 2d 339, ¶ 31 (citing *Miranda*, 384 U.S. at 463–66). Before a custodial interrogation, a suspect must be advised of the right to have an attorney present during the interrogation. *Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981). If a suspect requests counsel at any time during the interview, he or she is not subject to further questioning until a lawyer has been made available or the suspect himself or herself reinitiates conversation. *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *Edwards*, 451 U.S. at 484–85). "Made available" in this context means that the attorney is present at the subsequent interrogation. *Minnick v. Mississippi*, 498 U.S. 146, 151–53 (1990). If the suspect does request counsel and

> the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards.

*McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).[7]

■

¶ 26. The Fifth Amendment/*Miranda* right to counsel during custodial interrogations is not offense specific. "Once a suspect invokes [this] right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present." *Id.* (emphasis in original); *see also Dagnall*, 236 Wis. 2d 339, ¶ 33.[8]

---

[7] There is a different standard applied when the right at issue is the right to remain silent. When the accused has invoked the right to remain silent, "[t]he state may again interrogate the accused . . . provided that [the] right to silence is 'scrupulously honored.' " *State v. Hartwig*, 123 Wis. 2d 278, 284, 366 N.W.2d 866 (1985) (citation omitted). Courts are to consider the following factors in deciding whether the right to remain silent has been violated by a subsequent interrogation, although the presence or absence of these factors is not "exclusively controlling," and the factors "do not establish a test which can be 'woodenly' applied":

> (1) [whether the] original interrogation was promptly terminated[;]
> (2) [whether the] interrogation was resumed only after the passage of a significant period of time[;] (3) [whether the] suspect was given complete *Miranda* warnings at the outset of the second interrogation[;] (4) [whether a] different officer resumed the questioning[; and] (5) [whether the] second interrogation was limited to a crime that was not the subject of the earlier interrogation.

*Id.* at 284–85 (citations omitted). Cole does not contend that his right to remain silent was violated when Officer Riley questioned him.

[8] In contrast to the Fifth Amendment/*Miranda* right to counsel during custodial interrogation, the Sixth Amendment to the United States Constitution guarantees a right to counsel "[i]n all criminal prosecutions." This right to counsel attaches when adversary judicial proceedings are commenced and, unlike the Fifth Amendment/*Miranda* right to counsel, it is offense specific, that is, tied to the crime with which the accused is charged. *State v. Dagnall*, 2000 WI 82, ¶¶ 30, 32, 236 Wis. 2d 339, 612 N.W.2d 680. Because the Sixth Amendment right to

¶ 27. When the State seeks to introduce an accused's custodial statements into evidence, it has the burden of proving by a preponderance of the evidence that the defendant received and understood the *Miranda* warnings, and knowingly and intelligently waived the rights protected by the *Miranda* warnings. *State v. Jiles*, 2003 WI 66, ¶ 26, 262 Wis. 2d 457, 663 N.W.2d 798. The State also has the burden of proving the statement was voluntary. *Id.*

¶ 28. Under the above case law, it is clear that, if Cole did invoke his Fifth Amendment/*Miranda* right to counsel when he was arrested on the battery charge, then the statement he gave Officer Riley while still in custody is inadmissible even if Cole's waiver of *Miranda* rights in that interview was otherwise valid. The parties' dispute centers on the allocation of the burden of

counsel provides assistance at every stage of the prosecution, it includes assistance at custodial investigations. *Id.*, ¶¶ 30, 33. Under the Sixth Amendment, after an attorney begins to represent the accused on a particular charge, the accused may not be questioned about that crime in the absence of the attorney. *Id.*, ¶ 53.

> A person who formally has been charged with crimes may be treated as a "suspect" in the investigation of other uncharged crimes . . . but the investigation of these other uncharged crimes may not serve as a pretext to interview the accused about the crimes charged when the accused has an attorney.

*Id.*, ¶ 55 (citation omitted). There is often confusion between the Fifth Amendment/*Miranda* right to counsel and the Sixth Amendment right to counsel because of the "piecemeal blending of the two during custodial interrogation." *Id.*, ¶ 33.

Cole does not contend that his Sixth Amendment right to counsel, which had already attached in the battery case, was violated by Officer Riley in the April interview. Therefore, we do not further discuss the Sixth Amendment right to counsel.

proof on this issue and the application of that burden to the evidence before the circuit court.

¶ 29. We begin our analysis with an examination of the record before the circuit court. The only testimony at the suppression hearing about what occurred when Cole was arrested on the battery charge was elicited from Officer Riley on cross-examination. He testified as follows:

Q. For the record, were you aware of whether or not [Cole] had given any statements previously on that battery case?

A. I read the police reports prior to my arrival and I'd see he did not.

Q. So you tried not to familiarize yourself with the case before that?

A. Yes.

Q. And you saw that he had requested a lawyer during his first arrest?

A. Yes.

Q. And that he had refused to make a statement?

A. Yes.

¶ 30. After Officer Riley completed his testimony, the court ascertained that neither party wished to present additional evidence. The court stated that the evidence was closed and ordered letter briefs. In reply to Cole's responsive brief, which asserted that it was undisputed he had asserted his Fifth Amendment/ *Miranda* right to counsel when he was arrested for the battery, the State attached a copy of a police report dated February 11, 2006, stating:

This report was written by P.O. Angela Gonzalez assigned to District Six, late shift. On 2–11–06 at 6:00 a.m. I, P.O. A. Gonzalez read subject (COLE, WILLIE B B/M. 3–8–52) his legal rights and asked him if he wanted to make a statement regarding Battery D.V. incident 06–041–0133. Cole stated he did not wish to make any statements to the police at this time.

¶ 31. In the State's reply brief and at the oral argument following briefing, the State argued that Officer Gonzalez's police report showed that Officer Riley was incorrect when he testified that he saw from the police reports that Cole had requested a lawyer during his first arrest. According to the State, there was therefore no evidence that Cole had requested a lawyer at that time. The State also stated that it might be necessary to present Officer Gonzalez's testimony. Defense counsel did not object to consideration of the police report, but instead treated it as part of the record before the circuit court. Defense counsel argued that it did not matter that the police report did not specifically state Cole had invoked his right to counsel because the report did state he did not want to talk to the police. The circuit court disagreed with this proposition because, in its view, *Edwards* required that Cole clearly invoke his Fifth Amendment/*Miranda* right to counsel in order to preclude all subsequent questioning without counsel present. The court stated that the burden was on Cole to show he had invoked his right to counsel after the State showed that Officer Riley gave him the *Miranda* warnings and obtained a waiver.

¶ 32. It is clear the circuit court relied on Officer Gonzalez's report in concluding that Cole did not meet this burden, although, as we discuss later in this opinion, it is not clear precisely what findings the court made based on this report. In addition, while the court did not expressly state that the report itself was more

94

persuasive than Officer Riley's testimony of what the report said, it is clear this was an implicit finding of the court.

¶ 33. Cole's primary argument in support of his contention that the circuit court impermissibly shifted the burden to him is that Officer Gonzalez's report was not in evidence and therefore the only evidence was Officer Riley's testimony on what he saw in the police reports. However, Cole did not object to the consideration of the police report at the oral argument after briefing, when he had an opportunity to do so. Instead, he presented an argument that took the report into account. Generally, a party must make an objection in the circuit court in order to preserve the issue for appeal. *See State v. Edwards*, 2002 WI App 66, ¶ 9, 251 Wis. 2d 651, 642 N.W.2d 537. We see no reason not to apply waiver here, and we conclude Cole has waived his objection to the circuit court's consideration of the police report.

¶ 34. Cole also contends that the burden was improperly shifted to him because, even if the police report is considered, it does not indicate "one way or the other" whether Cole invoked his Fifth Amendment/*Miranda* right to counsel. An analysis of this argument raises two issues. The first issue is which party has the burden of proving that Cole previously invoked his Fifth Amendment/*Miranda* right to counsel. The second issue is whether the circuit court considered the police report to be evidence that Cole did not invoke his Fifth Amendment/*Miranda* right to counsel or, instead, found that the lack of reference to Cole's invocation of this right simply meant there was no evidence on this point.

¶ 35. As we have stated above, it is the State's burden to prove by a preponderance of the evidence that

the defendant validly waived his *Miranda* rights and that the statement was voluntary. *See Jiles*, 262 Wis. 2d 457, ¶ 26. The State accomplishes this by, first, producing evidence to establish a prima facie case. *See State v. Santiago*, 206 Wis. 2d 3, 18–19, 556 N.W.2d 687 (1996). If the evidence does not establish a prima facie case, the State does not meet its burden of persuasion. *See id.* at 26; *see also Jiles*, 262 Wis. 2d 457, ¶ 46 (defense counsel could have refrained from producing evidence because the State failed to meet its initial burden of production). In other words—at least in the only cases we have found on this point in the *Miranda*/waiver context—the State's burden of proof consists of both the burden of the initial production of evidence for a prima facie case and the ultimate burden of persuasion. *See State v. Armstrong*, 223 Wis. 2d 331, 344 n.19, 588 N.W.2d 606 (1999) (citing *Santiago*, 206 Wis. 2d at 19).

¶ 36. If the State does establish a prima facie case of waiver and voluntariness, then, in the absence of countervailing evidence, the statement should be admitted. *State v. Mitchell*, 167 Wis. 2d 672, 696, 482 N.W.2d 364 (1992).

¶ 37. The State contends that it established its prima facie case because it proved that Officer Riley advised Cole of his *Miranda* rights and Cole indicated he understood them and was willing to make a statement. In the State's view, Cole then had the burden of producing credible evidence that he had previously invoked his Fifth Amendment/*Miranda* right to counsel, but he did not produce such evidence. The State does not view Officer Riley's testimony as adequate to meet Cole's burden of production because, the State asserts, the court implicitly found not credible Officer Riley's testimony that he saw from the police reports that Cole had invoked his right to counsel. As noted

96

above, Cole disagrees with the State's view on the burden of proof. Cole asserts that the State must prove he waived his right to counsel in the earlier interview with Officer Gonzalez as part of its burden of proving that his statement to Officer Riley is admissible.

¶ 38. The parties have not provided, and we have not discovered, any case that addresses the burden of proof in a factual context similar to this—where the defendant asserts he previously invoked his right to counsel as a basis for invalidating a later waiver.[9] However, we are persuaded that placing the burden on the State to show a prior waiver of this right, where the defendant has timely raised the issue, is more consistent with the principles established in existing case law. The *Edwards* rule—that a suspect who has invoked the Fifth Amendment/*Miranda* right to counsel may not be approached for further interrogation unless counsel is present (assuming no break in custody)—is a "second layer of prophylaxis for the *Miranda* right to counsel." *McNeil*, 501 U.S. at 176–77. The importance of this rule is emphasized by the consequences of not following it: "the suspect's statements are presumed involuntary

---

[9] The State cites *State v. Coerper*, 199 Wis. 2d 216, 544 N.W.2d 423 (1996), as consistent with its position that, if there is no evidence of a prior invocation of counsel, the State prevails. However, *Coerper* did not address the burden of proof issue. The issue in *Coerper* was whether statements of the accused's counsel that the accused was not to be interviewed regarding another offense without counsel's presence sufficed to invoke the accused's Fifth Amendment/*Miranda* right to counsel. *Id.* at 223–25. The court concluded it did not suffice because the invocation must be made personally by the accused. *Id.* at 225. Because the court found no evidence of a personal invocation, it concluded the statement at issue was admissible. *Id.* We do not find in *Coerper* an analysis that is applicable to the issue presented in this case.

and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *Id.* at 177. Placing the burden on the suspect to prove he or she did not waive that right, before this presumption of involuntariness arises, vitiates this rule and is inconsistent with the general principle that it is the State's burden to prove the accused has waived his or her right to counsel in a custodial situation. *See Miranda*, 384 U.S. at 475 (a heavy burden is placed on the State to show a waiver of the right to counsel in a custodial interrogation).

■■■

¶ 39. We emphasize that, in order for the State to have the burden of proof—both the burden of going forward with a prima facie case and the burden of persuasion—that the accused previously waived his or her Fifth Amendment/*Miranda* right to counsel, the defendant must timely put the State on notice that he or she is claiming he or she did not waive this right. *See Santiago*, 206 Wis. 2d at 20–21, 25–26 (State need not in every case present the foreign language *Miranda* warnings and their translation in order to make a prima facie case of a valid waiver; but it must do so when the defendant puts the State on timely notice—either in the motion to suppress or during the State's initial presentation of evidence—that he or she is claiming the foreign language warnings were inadequate). Here, Cole's motion to suppress put the State on timely notice that he was claiming his statement to Officer Riley was inadmissible because he had previously invoked his Fifth Amendment/*Miranda* right to counsel when interviewed by Officer Gonzalez on the battery charge.

¶ 40. Because we conclude the State had the burden of proof—both the burden of producing evidence to

establish a prima facie case and the burden of persuasion—that Cole previously waived his Fifth Amendment/*Miranda* right to counsel, we agree with Cole that the court erroneously placed the burden on him to prove he had invoked that right.

¶ 41. We now return to an examination of the record in light of the correct burden of proof. As we have already stated, Officer Gonzalez's report was properly before the circuit court in the absence of an objection by Cole. The court implicitly found that the report itself was more persuasive than Officer Riley's testimony on what he saw in the report. This implicit finding is not clearly erroneous. It is reasonable to decide that, because the report does not make a reference to Cole invoking the right to counsel, Officer Riley must have been mistaken when he testified that he saw this in the police report.

¶ 42. However, it is not clear to us from the record whether the circuit court found that the absence of a reference in the report to Cole's invocation of his right to counsel meant, on the one hand, that he did not invoke that right[10] or, on the other hand, that there was no evidence one way or the other. This distinction did not matter given the circuit court's conclusion that the burden was on Cole to prove he had invoked his Fifth Amendment/*Miranda* right to counsel, because in either case Cole had not met that burden. However, because we have concluded that the burden is on the State to prove Cole did not previously waive his right to counsel, it *does* matter how the court viewed the police report. If the absence of a reference in the report to

---

[10] A finding that Cole did not invoke his Fifth Amendment/*Miranda* right to counsel, based on Officer Gonzalezs report, would not be clearly erroneous. It is reasonable to infer that Officer Gonzalez would have noted such a significant event if it had occurred.

Cole's invoking his right to counsel is viewed as evidence that Cole did not invoke that right, then the State has met its burden, given that the court could reasonably discount Officer Riley's testimony on the report's content. On the other hand, if there is no evidence one way or the other, the State has not met its burden.

¶ 43. Because the circuit court applied an incorrect burden of proof, and because we are unable to resolve this appeal as a matter of law by applying the correct burden of proof to the record before us, we reverse the ruling on this motion and conditionally reverse the judgment of conviction. We remand to the circuit court with instructions to determine, applying the correct burden of proof, whether Cole previously invoked his Fifth Amendment/*Miranda* right to counsel in the interview with Officer Gonzalez. On remand, the court is not limited to Officer Gonzalez's report but may permit the parties to present additional evidence on this issue.

¶ 44. If the circuit court determines that Cole did not previously invoke his Fifth Amendment/*Miranda* right to counsel and affirms its original ruling denying suppression, the court should reinstate the judgment of conviction. If, on the other hand, the court determines Cole did previously invoke that right and concludes his statement should be suppressed, the court should do the following. The court should determine whether any derivative evidence must be suppressed.[11] The court

---

[11] Cole asks that we vacate the judgment of conviction and remand with an order to suppress the evidence the court erroneously failed to suppress and derivative evidence. The State responds that, if we conclude the court erred, we should direct on remand that the court determine what derivative evidence, if any, must also be suppressed. The State asserts that the record does not show what derivative evidence may have been discovered as a result of Cole's statement, and Cole does not reply to this assertion. Therefore, we leave it to the court on

should then conduct such further proceedings as appropriate with respect to the withdrawal of Cole's plea.[12] If Cole's plea is withdrawn, the reversal of the judgment of conviction will stand. If his plea is not withdrawn, the judgment of conviction shall be reinstated.

## CONCLUSION

¶ 45. We conclude the circuit court properly denied Cole's motion to suppress his letter and we affirm this ruling. However, we conclude the circuit court applied an incorrect burden of proof to the motion to suppress Cole's statement to Officer Riley. Accordingly, we reverse this ruling and conditionally reverse the judgment of conviction. We remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment conditionally reversed and cause remanded with directions.

remand to determine what, if any, derivative evidence should be suppressed, if the court determines Cole's statement should be suppressed.

[12] We note that under *State v. Semrau*, 2000 WI App 54, ¶ 21, 233 Wis. 2d 508, 608 N.W.2d 376 (citing *State v. Armstrong*, 225 Wis. 2d 121, 122, 591 N.W.2d 604 (1999)), a harmless error analysis is appropriate in cases appealed under Wis. Stat. § 971.31(10). Section § 971.31(10) provides:

> (10) An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty.

The State has not made a harmless error argument on appeal.