764 So.2d 663 (2000)
STATE of Florida, Appellant,
v.
Robert D. LEONARD, Appellee.
No. 1D99-2081.
District Court of Appeal of Florida, First District.
May 17, 2000.
Robert A. Butterworth, Attorney General; Karla D. Ellis, Assistant Attorney General, Tallahassee, for Appellant.
Nancy A. Daniels, Public Defender; David A. Davis, Assistant Public Defender, Tallahassee, for Appellee.
*664 LAWRENCE, J.
The State appeals the granting of the motion to suppress filed by Robert D. Leonard (Leonard). We reverse.
A police officer was called to Leonard's duplex apartment by a duplex neighbor's repeated complaints of loud noise. The officer, after conferring with the neighbor and confirming that the loud noise was coming from Leonard's adjacent apartment, walked toward Leonard's front doorabout twenty feet away. The officer smelled the odor of marijuana about ten feet from the door; the odor grew stronger as he approached Leonard's door.[1] The officer, concerned now with not only the noise complaint, but also violations of the drug laws and his personal safety under such circumstances, stood on his tip toes[2] and looked through the window before knocking. The window was an integral part of the top section of the door, spanning the entire width of the door. The officer saw Leonard smoking marijuana and, when he knocked and identified himself, saw Leonard removing the ashtrays to a back room, wiping the kitchen counters, and spraying air deodorant. Leonard finally came to the door, but refused to open it. Leonard, in a face to face conversation with the officer through the window, among other things, told the officer to get a search warrant. The officer then left the premises and obtained an arrest warrant for Leonard.[3]
The facts are not in dispute and the State and Leonard agree: "Review of a Florida motion to suppress is a mixed question of law and fact, yoked to federal law." Butler v. State, 706 So.2d 100, 101 (Fla. 1st DCA 1998) (citing federal and state cases). The parties disagree on whether what the officer saw was in plain view. The trial court determined that Leonard's activities were not in plain view because the officer had to stand on his tip toes, or on the door sill of Leonard's apartment, to see Leonard's activities. The trial court, in reaching this legal conclusion, relied on State v. Adams, 378 So.2d 72 (Fla. 3d DCA 1979) (affirming suppression of evidence). We find Adams inapposite to the instant facts; the Adams court found evidence out of plain view based on these facts:
Acting upon the information supplied by an informant, Miami Police Officers Allagood and Cox proceeded to a rooming house where the Defendants were said to be residing and in possession of marijuana. Upon arrival, Officer Allagood went to the Defendants' apartment, but since he could not see through the window, which was above his eye level Officer Allagood stepped up onto the porch, stood on a chair, and peered in, observing the Defendants sitting in a room which contained marijuana.
Id. at 73 (emphasis added). A reasonable person would not expect others to look into a window by standing on chairs or other ladders. The parties at bar agree however that the officer had a right to be at the door where he smelled marijuana, based on a neighbor's complaint. We regard it as reasonable under the circumstances of this case for an officer to stretch himself to his full height, including standing on tip toes or doorsills, to gain a better view. See James v. United States, 418 F.2d 1150, 1151 (D.C.Cir.1969) (affirming a grand larceny conviction and holding: "That the policeman may have to crane his neck, or bend over, or squat, does not render the [plain view] doctrine inapplicable, so long as what he saw would have been visible to any curious passerby.")
*665 We accordingly reverse and remand for consistent proceedings.
REVERSED.
WOLF and KAHN, JJ., concur.
NOTES
[1] This incident occurred on June 26, 1998, in Leon County.
[2] The officer subsequently also stood on the door "stoop," which was described as that part of the building to which the lower portion of the door frame was attached.
[3] Some time after the officer left the premises, black plastic bags were taped over the inside of the window through which the officer earlier had peered.