HANKINSON, JAMES C., Associate Judge.
This appeal concerns the denial of a motion to suppress all evidence obtained following the search and seizure of illegal drugs. Defendant argues the search and seizure was an intrusive government act which violated his Fourth Amendment rights. We disagree. Because the trial court’s factual findings that the search was performed by an individual acting in a private capacity are supported by compe *592 tent substantial evidence, we find no Fourth Amendment violation and affirm the trial court’s decision.

FACTS

Defendant — Jessie James Armstrong— was charged by information in two separate cases with possession of marijuana with intent to sell. The first case arose when the postal service mistakenly delivered a package containing marijuana to the residence of Joseph Armstrong, an agent with the F.B.I. A few days later a second, similar package was delivered to Agent Armstrong’s address. He notified the sheriffs office and a search warrant was obtained for the second package. This package contained a bundle of marijuana similar to that found in the first package and resulted in the second case.
Prior to the trial in either case, defendant moved to dismiss all statements and evidence stemming from Armstrong’s seizure of the original package. Defendant claimed Armstrong had opened the package in his official capacity as an agent of the state, thereby violating the Fourth Amendment protection against unreasonable search and seizure. Defendant argued that all evidence flowing from the search of the original package — including the discovery of marijuana in the second package — was suppressible as fruit of the poisonous tree.
A suppression hearing was held during which Agent Armstrong testified:
• He received a package addressed to “J. Armstrong.” The address listed on the package was similar to his personal address; the house number differed by only three digits and the street number by only one digit.
• Since he was unsure if the package was intended for him, he went to the address listed on the package, but no one was there.
• He returned home and opened the outer package, exposing a square bundle covered in plastic wrap and newspaper.
• Agent Armstrong worked on the “Joint Terrorism Task Force.” Due to the nature of his work, Armstrong had some concerns that the package might contain a bomb or Anthrax. Because it was the holiday season, he also thought that the package might be a gift to him.
• In the course of his other duties, Agent Armstrong carried the package to work the following day. On the way, he wrote down the license numbers of the vehicles at the listed address.
• At work, he ran the package through an x-ray machine, which detected no metal objects.
• Agent Armstrong mentioned the package to Sheriffs Deputy Joseph Bran-naman, with whom he worked on the task force. Brannaman suggested he should “open it up and see what it is, what’s the big dealt?]”
• Agent Armstrong decided to open the package. Since Brannaman had a pen knife, he allowed Brannaman to cut through the plastic wrap and newspaper, at which time the officers detected the smell of marijuana.
• Agent Armstrong then ran a check on the tag numbers and turned the marijuana over to the authorities.
Given this testimony, the trial court found Agent Armstrong was acting in his capacity as a private citizen, not a government agent, when he opened the package. The trial court emphasized that at the time Armstrong opened the package, he was its actual recipient and feared he might be the victim of a crime. The trial court found any interaction between Armstrong and *593 other law enforcement officers was in his private capacity as a concerned citizen, not in his official capacity as an F.B.I. agent. Since it found there was no government action, the trial court concluded there was no Fourth Amendment violation and denied the motion to suppress, which it found dispositive as to both cases.
On appeal, defendant raises two arguments. First, he claims Agent Armstrong was acting in his capacity as a government agent at the time he searched the package misdelivered to his address. Since the search was not justified under any of the exceptions to the warrant requirement, defendant concludes it violated his Fourth Amendment rights. Second, defendant claims that even if Armstrong’s actions could be construed as those of a private citizen, the search became a government action due to the active participation of Deputy Brannaman. For the reasons that follow, we find neither argument persuasive.

ANALYSIS

Review of a motion to suppress presents a mixed question of law and fact. See State v. Leonard, 764 So.2d 663, 664 (Fla. 1st DCA 2000). We must examine the trial court’s factual findings to ensure they are supported by competent substantial evidence and examine its application of the law to the facts de novo. See Williams v. State, 721 So.2d 1192, 1193 (Fla. 1st DCA 1998); Phuagnong v. State, 714 So.2d 527, 529 (Fla. 1st DCA 1998). Here, since neither party disputes the facts essential to the case, we need only review the trial court’s application of the law to the facts. See State v. Furr, 723 So.2d 842, 844 (Fla. 1st DCA 1998). In particular, we must determine whether the search and seizure of the marijuana in the original package was accomplished by a government or a private actor.
The Fourth Amendment to the United States Constitution and Article I, section 12 of the Florida Constitution guarantee the right to be free from “unreasonable searches and seizures.” The opinions of the United States Supreme Court must be followed on all search and seizure issues, regardless of whether the claim of an illegal search is based on the Florida or United States Constitution. See Green v. State, 824 So.2d 311, 313 (Fla. 1st DCA 2002).
For evidence to be excluded pursuant to the Fourth Amendment, the moving party must demonstrate the government has infringed upon his reasonable expectation of privacy.[1] See State v. Butler, 1 So.3d 242, 246-47 (Fla. 1st DCA 2008). Importantly, the protection against unreasonable searches and seizures applies only to cases involving governmental action; it does not apply when the search or seizure was conducted by a private individual. See Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (stating the Fourth Amendment can be invoked only when a person can claim that a “legitimate expectation of privacy [ ] has been invaded by government action”); Pomerantz v. State, 372 So.2d 104, 108 (Fla. 3d DCA 1979) (stating neither the state nor federal constitution “affords any protection against purely private searches and seizures no matter how unreasonable”). The party objecting to the search or seizure has the burden to establish gov *594 ernment involvement by a preponderance of the evidence. See Treadway v. State, 534 So.2d 825, 827 (Fla. 4th DCA 1988).
Here, defendant argues Armstrong was acting in his capacity as an F.B.I. agent at the time of the search and seizure. Neither party has cited the Court to any binding precedent in the State of Florida that directly controls the issue presented. One court has used a two-pronged analysis in deciding whether an off-duty law enforcement officer is acting in his official capacity or as a private citizen. See U.S. v. Couch, 378 F.Supp.2d 50, 55 (N.D.N.Y.2005). The court in Couch set out its analysis:
First, we must examine the capacity in which the off-duty police officer was functioning when the officer initially confronted the situation and second, we must examine the manner in which he or she conducted himself or herself from that point forward.
378 F.Supp.2d at 55, quoting State v. Andrews, 33 Conn.App. 590, 637 A.2d 787, 790-91 (1994) (emphasis added).[2] We find this to be a logical method of analyzing the issue presented.
The first prong of the analysis is self-explanatory. When considering the second prong of the analysis (i.e. the manner in which the off-duty officer conducted himself), a court must determine whether the off-duty officer’s actions fell “outside [the] sphere of legitimate private action.” Commonwealth v. Leone, 386 Mass. 329, 435 N.E.2d 1036, 1041 (1982). Crucial to this consideration is the purpose behind the off-duty officer’s decision to conduct the search. If the search is motivated by a legitimate private purpose, it retains its private character; if it is motivated solely by a governmental purpose, it becomes state action. Id. (finding that when an off-duty police officer’s “conduct is justified by his legitimate private duties [as a security guard], it should not be treated as lawless, or ‘unreasonable,’ search and seizure”).
For example, in State v. Walker, 236 Neb. 155, 459 N.W.2d 527, 532-33 (1990), an off-duty police officer was found to have conducted a private search when, functioning in his capacity as a landlord, he entered a tenant’s house. The court stated that although the officer apparently “was aware of suspected drug activity at the house,” his actions were consistent with his stated purpose of entering the house solely to discuss tenancy issues. Id. at 533.
Likewise, in State v. Cole, 315 Wis.2d 75, 762 N.W.2d 711, 716-17 (2008), a letter from a defendant instructing family members to prevent a witness from testifying at trial was misaddressed and delivered to the home of a sheriffs officer. Believing the letter was intended for her, the officer opened and read it. Id. at 716. Upon *595 realizing that the letter was not intended for her, she returned to work, entered the defendant’s name into a database, and discovered he had a court date scheduled. Id. The officer then contacted the district attorney prosecuting the case and gave that attorney the letter. Id. The court found the opening of the letter and all subsequent actions to be private activity, emphasizing the purpose behind the officer’s actions:
[t]he activity she was engaged in when she opened [defendant’s] letter — opening mail that had been delivered to her home — was that of a private citizen. Even given our assumption that she saw the front of the envelope before she opened it and so knew it was not intended for her, she did not know [the sender or listed recipient] or have reason to suspect that she might discover criminal activity by opening the letter.
Id. at 717.
From the foregoing, it may be inferred that so long as there is a reasonable private purpose for the search conducted by the off-duty officer, the search will not violate the Fourth Amendment. Consequently, to show that Armstrong was acting in his capacity as a F.B.I. agent when searching the original package, defendant had to establish by a preponderance of the evidence that either: (1) Armstrong was acting in his official capacity when he received the package; or (2) Armstrong’s actions after receiving the package demonstrated a solely official purpose.
Defendant has failed to show that Armstrong’s search was a governmental act. Initially, it is undisputed that Armstrong was acting in his private capacity when he received the package. It was delivered by the postal service to his home. Indeed, defendant even admits that had Armstrong opened the package upon first receiving it, without taking further action, any search would have been private in character.
Defendant claims Armstrong’s actions in writing down tag numbers and x-raying the package are usually performed by law enforcement officers conducting an investigation. While this may be true, defendant overlooks the dual private purpose for Armstrong’s actions, namely to ensure his safety in the event that the package contained a bomb or Anthrax.
Agent Armstrong testified that upon opening the exterior of the package, he became concerned it might contain a dangerous substance, a concern only heightened due to the fact that, as an F.B.I. agent, he was a likely target for threats. Accordingly, he wrote down the tag numbers of the vehicles in front of the listed address and took the package to the nearest F.B.I. office, where it was scanned and opened in the presence of a law enforcement officer. Given the circumstances, and considering Armstrong’s occupation, such conduct was not surprising or extraordinary. Any reasonable individual would have likely acted in the same manner if placed in the same circumstances.
Because the actions taken by Agent Armstrong after receiving the package had a legitimate private purpose, we conclude Armstrong’s involvement in the search was in his private capacity. Defendant also argues various actions taken by Agent Armstrong after the marijuana was discovered.[3] However, these actions are *596 irrelevant as to whether Armstrong was acting as a law enforcement officer at the time the package was opened. Consequently, Armstrong’s actions did not infringe on defendant’s Fourth Amendment rights.
Defendant also claims the motion to suppress should have been granted because Deputy Brannaman’s participation made the search governmental in nature. Defendant emphasizes that Brannaman actively participated in the search by using his knife to open the inner wrappings of the package.
Initially, we find that this argument was not raised in the proceedings below, and therefore is not preserved for our review. See § 924.051(3), Fla. Stat. (2008); Morrison v. State, 818 So.2d 432, 446 (Fla.2002) (finding that because a defendant “did not argue the point he now raises below [in support of his motion to suppress], he is foreclosed from raising that argument” on appeal).
Turning to the merits, “[a] search by a private person becomes a government search if the government ‘coerces, dominates, or directs the actions of a private person’ conducting the search.” U.S. v. Souza, 223 F.3d 1197, 1201 (10th Cir.2000), quoting Pleasant v. Lovell, 876 F.2d 787, 796 (10th Cir.1989). In other words, the private search becomes a governmental act if, due to government participation, the private actor becomes an instrumentality or agent of the state. The test for determining whether a private actor has become a state agent is two-fold: (1) whether the government was aware of ■and/or acquiesced in the search; and (2) whether the individual’s purpose in conducting the search was solely to assist the police. See Butler, 1 So.3d at 246; Treadway, 534 So.2d at 827. Importantly, when a dual purpose for the search exists such that the private actor is also pursuing his own ends, the search generally retains its private character. See Glasser v. State, 737 So.2d 597, 598-99 (Fla. 4th DCA 1999).
Here, as previously discussed, Agent Armstrong stated his decision to involve the authorities was to ensure it was safe to open the package. This was a legitimate private purpose separate and apart from any benefit to the government. Therefore, it cannot be said that Armstrong’s interaction with Brannaman at the time the package was open meant he was operating as an agent or instrumentality of the state.
Moreover, Brannaman’s involvement in the search was minimal. Armstrong testified he mentioned the package to Branna-man, who stated “open it up and see what it is, what’s the big deal[?]” Armstrong also testified that when he decided to open the internal contents of the package, he allowed Brannaman to cut through the plastic and newspaper simply because Brannaman was carrying a pen knife. It cannot be inferred from this testimony that Brannaman coerced Armstrong into opening the inner package; Armstrong’s testimony indicates he alone made this decision. It seems Brannaman became involved simply because he was the closest individual with a pen knife.
Cases involving similar circumstances clarify that such minimal involvement by a law enforcement officer does not transform a private search into a governmental action, particularly when there is a private purpose for the search. See U.S. v. Leffall, 82 F.3d 343, 349 (10th Cir.1996) (finding that having a police officer serve *597 as a witness did not affect the private nature of a search, as there was a legitimate private purpose for the search and the officer did nothing to encourage it); U.S. v. Gomez, 614 F.2d 643, 644-45 (9th Cir.1979) (finding a police officer’s “slight participation” in a baggage search did not affect its private character, despite the fact that the officer “tapped or kicked” the lock of the bag to release it after an airline employee had difficulty opening it). Accordingly, we do not find that Branna-man’s participation here changed the private nature of the search.

CONCLUSION

In conclusion, we find that there is competent substantial evidence upon which the trial court could have found that the defense failed to prove that Agent Armstrong was acting in his law enforcement capacity when he opened the original package. Therefore, the search fell outside the parameters of the Fourth Amendment and defendant’s motion to suppress was properly denied. For the foregoing reasons, the trial court’s order is AFFIRMED.
HAWKES, C.J., concurs; BENTON, J., dissents with opinion.

. There is no dispute that defendant had a reasonable expectation of privacy in the original package, which listed his last name and address. See Daniels v. Cochran, 654 So.2d 609, 612 (Fla. 4th DCA 1995) (finding sealed packages in the mail cannot be opened without a warrant). The sole question on appeal is whether this privacy interest was invaded by a government actor.

. This test is similar to, yet distinguishable from, the test used to ascertain whether private actors are conducting the search as in-strumentalities or agents of the state. Such situations arise when the government participates and/or encourages a search conducted by a private actor. See Treadway, 534 So.2d at 827. To determine whether the private individual is acting as an agent of the state, courts look to (1) whether the government was aware of and acquiesced in the conduct; and (2) whether the individual's purpose in conducting the search was solely to assist the police. Id.; see also State v. Moninger, 957 So.2d 2, 4-5 (Fla. 2d DCA 2007). Here, defendant's argument is not that the state prompted or encouraged Armstrong into searching the package, but that Armstrong— acting in his official capacity as an F.B.I. agent — searched the package of his own accord. Consequently, the test to determine whether an off-duty law enforcement officer acted in his/her official capacity seems more applicable than the test to determine whether a private individual was conscripted into serving as an instrumentality or agent of the state. Cf. State v. Iaccarino, 767 So.2d 470, 475 (Fla. 2d DCA 2000).

. We need not address whether Armstrong's actions in running the tag numbers transformed the character of the search. The trial court clearly found that Armstrong did not run the tag numbers until after the package had been opened and the marijuana had been found. Even if Armstrong had investigated the tag numbers prior to discovering the marijuana, the search may have still retained its private character. See Cole, 762 N.W.2d at *596 716-17 (finding solely private action when a letter regarding witness tampering was mis-delivered to an off-duty officer, despite the fact that she ran a background check on the sender before releasing it to the authorities).