COURT OF APPEALS
DECISION
DATED AND FILED

August 20, 2019

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1639-CR**

Cir. Ct. No. **2016CF4201**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PATRICK D. ZOLLIECOFFER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: WILLIAM S. POCAN, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Kessler, Brennan and Kloppenburg, JJ.

¶1 BRENNAN, J. Patrick D. Zolliecoffer seeks a new trial after his convictions for disorderly conduct, battery to a law enforcement officer, and attempted disarming of a peace officer. He contends on appeal that the trial court

erred when it denied his motion to substitute counsel on the eve of trial and when it denied his **Batson**[1] motion challenging two of the State's peremptory strikes as racially based.

¶2      The State argues that Zolliecoffer is not entitled to a new trial. The State argues the trial court properly exercised its discretion in denying Zolliecoffer's motion to substitute counsel because he made it the Friday before the Monday start of trial, the case had been pending eight months, he had been permitted to substitute counsel previously, and he had been granted adjournments previously. The State notes that the trial court said the motion "appear[ed] to, perhaps, be for the purpose of delay." The State also argues that Zolliecoffer offered no reason as to why he could not proceed with his assigned counsel. As to his **Batson** challenge, the State concedes the trial court failed to make the factual determinations that the **Batson** analysis requires. It argues that Zolliecoffer is entitled to a remand for a hearing for the trial court to rule on the **Batson** challenge.

¶3      For the following reasons, we conclude that the trial court did not erroneously exercise its discretion when it denied Zolliecoffer's motion for substitution of counsel. We also conclude that the trial court erred in denying Zolliecoffer's **Batson** motion because it failed to apply the **Batson** analysis and make the findings necessary to the application of that analysis. We must remand for the trial court to do so because we are precluded from making findings of fact. *See **Wurtz v. Fleischman***, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980)

---

[1] ***Batson v. Kentucky***, 476 U.S. 79, 89 (1986), held that the Equal Protection Clause prohibits the State from striking a potential juror solely on the basis of race. It also established a three-step analysis to be employed when a peremptory juror strike is challenged. *Id.* at 96-98.

(holding that WIS. CONST. art. VII, § 5(3), "precludes [the court of appeals] from making any factual determinations where the evidence is in dispute"). We therefore affirm in part, reverse in part and remand for a hearing on the ***Batson*** challenge.

## BACKGROUND

¶4 After an altercation that occurred during and immediately after a September 2016 proceeding in family court, Zolliecoffer was charged with disorderly conduct, battery to a law enforcement officer, and attempting to disarm a peace officer.

**Counsel appointed to Zolliecoffer.**

¶5 In December 2016, appointed counsel Attorney Kevin Gaertner appeared at a status conference on behalf of Zolliecoffer.[2] Trial was scheduled for January 25, 2017. Attorney Gaertner requested a new trial date because he had not yet received discovery. With no objection from the State, the trial court rescheduled trial for March 1, 2017.

¶6 At the final pretrial hearing held on February 22, 2017, Zolliecoffer indicated that he wanted to go to trial. Attorney Gaertner asked the trial court for additional time to locate and question witnesses. The State did not object. The trial court rescheduled trial for April 26, 2017.

---

[2] Appointed counsel Attorney Anthony Procaccio had appeared with Zolliecoffer to waive his right to a preliminary hearing. In November 2016, the trial court permitted Attorney Procaccio to withdraw as counsel because he no longer worked for the State Public Defender's office, and Attorney Gaertner was appointed as replacement counsel.

¶7    On February 24, 2017, Zolliecoffer moved the trial court through counsel to permit Attorney Gaertner to withdraw as counsel. The motion stated that there had been "a breakdown in communications" and that Zolliecoffer requested new counsel.

¶8    At a hearing on the motion on March 3, 2017, the trial court stated that because Zolliecoffer's first appointed attorney had withdrawn due to a change of employment, the trial court would treat Attorney Gaertner as Zolliecoffer's first attorney for purposes of the motion and that it was inclined to grant Zolliecoffer's request. The trial court then warned Zolliecoffer that it does not "allow multiple change of attorneys." The trial court stated that the next attorney "is going to be [Zolliecoffer's] last attorney in this case short of something very unusual occurring." The trial court added, "[I]f this issue comes with your next attorney, if I grant your request, most likely, my answer next time will be, no." After confirming with Zolliecoffer that he wanted to have a new attorney appointed, the trial court granted his request, and Attorney Jeremy Evans was appointed.

¶9    At a status conference on March 20, 2017, Attorney Evans requested that the trial date be adjourned because he had not yet received discovery. With no objection from the State, the trial court granted the request. Trial was rescheduled for May 22, 2017.

¶10    On May 3, 2017, Zolliecoffer appeared with Attorney Evans at the final pretrial hearing. The trial court confirmed that the parties were ready for the May 22, 2017 trial.

4

**May 19, 2017 hearing on Zolliecoffer's motion to substitute private counsel.**

¶11     Through counsel, Zolliecoffer requested that the trial court set a hearing on May 19, 2017, the Friday before the jury trial was scheduled to begin, to hear his motion to permit Attorney Evans to withdraw and allow substitution of private counsel.

¶12     Attorney Thomas Flanagan, who was present at the hearing, informed the trial court that he had been retained by Zolliecoffer.   Attorney Flanagan stated to the trial court that he "would be ready to hit the ground running" but said "Monday is a little bit soon[.]"   Attorney Flanagan told the trial court that he had understood that Monday, May 22, 2017, was a pretrial hearing but then learned that it was the date of the jury trial.   Attorney Flanagan further stated that Zolliecoffer had informed him that he and Attorney Evans had "not been able to communicate very well."   He stated that Zolliecoffer had wanted to obtain private counsel but did not have the funds until that point.   Additionally, Attorney Flanagan stated that the State had indicated an intention to obtain a statement from one of the defense's witnesses it had not been aware of earlier.   Finally, Attorney Flanagan stated that he wanted to review the record further and wanted to check on whether a transcript existed from the family court hearing.   Attorney Evans then informed the trial court that he had confirmed by going in person to the courthouse that the September 12, 2016 hearing had not been recorded and no transcript had been prepared.

¶13     The State indicated that it would not join in the defense's request for adjournment.

¶14     Attorney Evans declined to make a statement regarding Zolliecoffer's request to obtain private counsel. Zolliecoffer was given an opportunity but also declined to make a statement to the trial court.

¶15     The trial court stated that "if Mr. Flanagan was able to proceed with the trial on Monday, [it] would be inclined to grant the request[.]" The trial court noted that this was not the first time that the case had been rescheduled for trial and that the case had been pending for eight months. The trial court further noted that it was suspicious that the request for substitution of private counsel was being done "for the purpose of delay," and even if it wasn't, it would result in delay. The trial court denied Zolliecoffer's request.

**Jury Selection and *Batson* Challenge.**

¶16     Jury selection began on May 22, 2017. Each party was given five peremptory challenges.

¶17     During *voir dire*, both the State and defense counsel asked questions concerning race and the jurors' ability to remain impartial.

¶18     After the jury was selected by the parties, defense counsel stated he "wish[ed] to bring a *Batson* challenge." He stated, "All three African-American jurors on the panel were struck. One was for cause. But the other two were struck by the State. So I am raising the *Batson [v.] Kentucky*."

¶19     The following exchange then occurred:

> The court: I don't think you are using it correctly. *Batson* is a challenge to the voir dire in general. And, quite frankly, I don't even have the details how the 30 people magically occurred in our courtroom. That's done in Room 106. It is really not a *Batson* challenge. The basis of your concern, and I know sometimes when we get to this point

6

sometimes the prosecutors wish to make a record as to why they struck one or more of the jurors, but it is not really a **Batson** challenge. But [prosecutor], do you wish to make any sort of record?

[Prosecutor]: I would agree. Every time that challenge has been brought up in the past it has always had to do with the jury panel. To be honest with you, I have not marked on my sheet who is African-American and who wasn't. So by process of elimination, Juror No. 18 for cause because the defense mentioned [and] I can give reasons as to the other two if there were two. I am saying race doesn't matter. I didn't write down the race that I struck.

The court: What other two are you talking about, [defense counsel]?

[Defense counsel]: Juror No. 1 and 21.

The court: All right. [Prosecutor], if you wish.

[Prosecutor]: As far as Juror No. 1, I had concerns about her ability to understand. Perhaps communicate, but that was one of my weaker strikes. Then No. 21 that came down to having zero children and maybe not understanding, you know, the things that go into child support hearings all of that being a parent. Plus she had no jury experience. Plus a factor was that she indicated she knew people in law enforcement, and she had no criminal justice—she had no criminal justice contacts. So definitely with respect to those two it had nothing to do with their race.

The court: All right. Thank you. Anything further from your perspective, [defense counsel]?

[Defense counsel]: Juror[] No. 6, Juror No. 12, Juror No. 14 and I believe No. 1, 16, and 17. They all had no kids and therefore no experience. Many of them had no experience with a jury. I don't see why that particularly disqualifies No. 21. I don't see how No. 1 is particularly disqualified. The State said it was one of his weaker strikes.

¶20 The trial court then asked, "Do you have legal—other legal arguments? It is not the **Batson** [challenge] that would be to the panel. If you have legal authority you want me to consider, I will." When defense counsel

stated, "I will just leave it at what I said," the trial court concluded, "Then no legal arguments have been made why the striking of Jurors 1 and 21 was in any way improper. So then there is nothing[,] no action for the [c]ourt to take."

**Conviction and sentencing.**

¶21    A jury found Zolliecoffer guilty on all three counts. The trial court imposed and stayed a sentence and placed Zolliecoffer on three years of probation. This appeal follows.

## DISCUSSION

### I.    The trial court properly exercised its discretion in denying Zolliecoffer's motion to substitute counsel on the eve of trial.

**Standard of review and relevant law.**

¶22    Under the Sixth Amendment to the United States Constitution, "[t]he [trial] [c]ourt must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome[.]" *Wheat v. United States*, 486 U.S. 153, 164 (1988). "The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id. See also State v. Prineas*, 2009 WI App 28, ¶14, 316 Wis. 2d 414, 766 N.W.2d 206. A trial court may not deny a defendant the right to retain counsel of his choice "arbitrarily or unreasonably." *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008). A trial court has discretion to decide motions that relate to the substitution of counsel. *Wheat*, 486 U.S. at 162-64. *See also State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988) ("Whether counsel should be relieved and a new attorney appointed in his or her place is a matter within the trial court's discretion."). A discretionary determination "must be the product of a rational

mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

¶23 "Because trial courts have broad discretion on matters of continuances, only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Carlson*, 526 F.3d at 1025 (citations omitted). *See also Prineas*, 316 Wis. 2d 414, ¶15 (trial court cannot deny defendant a continuance "arbitrarily or unreasonably").

¶24 An appellate court "independently reviews whether deprivation of a constitutional right has occurred." *State v. Jones*, 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378. In evaluating the trial court's exercise of discretion, our supreme court has set forth factors for the reviewing court to consider: the sufficiency of the court's inquiry into the defendant's issue, the timeliness of the motion, and whether the conflict between the defendant and counsel was so significant that it was likely they could not communicate to the extent that prevented an adequate defense. *Lomax*, 146 Wis. 2d at 359. Upon review we determine whether the trial court considered relevant factors including the length of the delay the defendant has requested, whether counsel is ready to try the case, whether there have been previous delays, the convenience or lack thereof to the parties and witnesses, and whether the delay seems legitimate or dilatory. *Id.* at 360.

**A. The trial court properly exercised its discretion in denying Zolliecoffer's motion to substitute counsel because it was untimely, his new counsel was unprepared to try the case, and no record was made of conflict with his current attorney.**

¶25 Zolliecoffer argues that the trial court "arbitrarily and unreasonably" denied his motion for substitution of counsel and continuance, relying on *Wheat*'s recognition of a presumption favoring the defendant's choice of counsel. After eight months of representation by attorneys appointed by the State Public Defender's Office, and after appearing with counsel for the final pretrial on May 3, 2017, Zolliecoffer appeared in court on the Friday before the Monday set for jury trial with recently retained counsel, Attorney Thomas Flanagan. Attorney Flanagan informed the trial court that he had been retained just two days earlier, that he was not told by Zolliecoffer that May 22, 2017, was the trial date, that he was not prepared to try the case, that he wanted a continuance to see if he could gather more evidence, and that Zolliecoffer wanted a new attorney because he and his attorney "have not been able to communicate very well." Despite the eleventh-hour motion for substitution and delay, Zolliecoffer contends the trial court acted "arbitrarily and unreasonably" because it did not honor the presumption in favor of a defendant's choice of counsel recognized in *Wheat*.

¶26 As *Wheat* itself held, the presumption in favor of the defendant's choice of counsel is not absolute but is considered in the context of other competing factors. *Wheat* emphasized that "that presumption may be overcome" and that "the evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.*, 486 U.S. at 164. Thus, a trial court's ruling is to be analyzed as any exercise of discretion by reviewing the trial court's balancing of the reasons for the request and the interests of effective judicial administration. *See Lomax*, 146 Wis. 2d at

360. Only if it was made "arbitrarily and unreasonably" is the denial of counsel of choice and continuance an improper exercise of discretion. *See* **Prineas**, 316 Wis. 2d 414, ¶15.

¶27 The parties agree that this court is reviewing whether the trial court appropriately exercised its discretion. Therefore we look first at the trial court's articulated reasons for denying the substitution motion. Here the trial court addressed the factors outlined in **Lomax**, the length of delay and reasons for it, the timeliness of the motion, the significance of the conflict between current counsel and the defendant, judicial administrative concerns, and whether the delay seemed legitimate or dilatory. It noted that Attorney Flanagan had stated that he thought Monday's jury trial date was "a pretrial hearing" and that he was not prepared to try the case. The trial court said that if Attorney Flanagan could try the case on Monday, it would be inclined to approve the substitution. But after noting that the case had been pending already for eight months, the trial court said it was concerned Zolliecoffer's motion was made for the purposes of delay.

¶28 The trial court's concerns about Zolliecoffer's motives for the motion were supported by the record. When Attorney Flanagan made the motion, he asked for an unspecified length of delay for a vague purpose—to see if he could find some more evidence. The closest he got to specifying why he needed the delay is that he said he wanted to investigate whether a transcript existed of the family court hearing before the court commissioner at which Zolliecoffer allegedly engaged in the criminal conduct. He made no statement as to how that would assist in Zolliecoffer's defense at trial. Further, Attorney Evans then informed the trial court that he had gone in person to request a transcript of the family court hearing and had confirmed that the hearings were not recorded and no transcript existed. Attorney Flanagan offered little or no explanation as to any conflict

11

between Zolliecoffer and his current lawyer. He said only that Zolliecoffer and his current counsel "have not been able to communicate very well."

¶29    Zolliecoffer compares these facts to those of *Carlson*, a Seventh Circuit case that held that the trial court had erred because it "ignored the presumption in favor of Carlson's counsel of choice and insisted upon expeditiousness for its own sake[.]" *Id.*, 526 F.3d at 1027.

¶30    *Carlson* presented a very different situation. In that case, the trial court had denied every request by the defendant for continuance and stated that the orderly administration of the court was "paramount[.]" Further, the trial court denied the defendant's substitution request even though it was the first one the defendant had made, and both the substitution and continuance requests were supported with a detailed explanation from both current and new counsel. New counsel told the court that there were unexplored factual and constitutional issues and a need for an expert witness, and that current counsel's failures to address those in preparation for trial were troubling enough to "raise[] issues of ineffective assistance of counsel[.]" *See id.* at 1020-21.

¶31    That was not the case here. The trial court *had* granted multiple adjournments and *had* already granted Zolliecoffer's first request for substitution of counsel. In *Carlson*, the newly retained counsel raised in detail issues that earlier counsel had failed entirely to investigate or research. *Id.* at 1021. In this case, the only specific fact newly retained counsel told the court about was that he wished to find out whether a transcript existed of the family court hearing. Zolliecoffer's counsel immediately informed the trial court that he had personally confirmed that no such transcript was prepared.

12

¶32 Here, the trial court considered the facts in the record, applied the proper law including the factors to be considered and reached a reasonable conclusion supported by the record.[3] We conclude that the trial court did not erroneously exercise its discretion when it denied Zolliecoffer's motion.

## II. Zolliecoffer is entitled to remand for a hearing on his *Batson* challenge because the trial court clearly erred by failing to apply the proper law.

### A. Standard of review.

¶33 The appropriate standard of review of the trial court's application of the *Batson* test is the clearly erroneous standard.[4] *State v. Lamon*, 2003 WI 78, ¶37, 262 Wis. 2d 747, 664 N.W.2d 607. "[D]iscriminatory intent is a question of fact decided by the circuit judge," and therefore "a trial court's conclusion on the issue of discriminatory use of peremptory challenges at step three should be given great deference." *Id.*, ¶41. Deference is given to the judgment of the trial court because the judge "is in the best position to determine the credibility of the state's race-neutral explanations." *Id.*, ¶42. Therefore, "the issue of discriminatory intent should not be overturned unless it is found that the determination was clearly erroneous." *Id.*, ¶43.

---

[3] A discretionary determination "must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

[4] Zolliecoffer acknowledges "the controlling case law requiring this [c]ourt to conduct a more deferential review." He has preserved for review by our supreme court the argument that in this case *de novo* review is warranted.

## B.    Analyzing a *Batson* challenge.

¶34    During jury selection, the peremptory challenge "allows parties to strike a potential juror without a reason stated, without inquiry, and without being subject to the court's control." *Lamon*, 262 Wis. 2d 747, ¶23.  While the strike is not constitutionally required, it is "essential to the fairness of trial by jury" because the strike is used for the purpose of eliminating "extremes of partiality on both sides and help[s] ensure that jurors will decide the case on the basis of the evidence presented." *Id.*

¶35    The Equal Protection Clause, however, "place[s] some limits on the State's exercise of peremptory challenges." *Batson v. Kentucky*, 476 U.S. 79, 91 (1986).  It forbids the prosecutor to use peremptory strikes of potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89.  Therefore, the State may not use a peremptory strike to exclude blacks from the jury for reasons that are unrelated to the outcome of the particular case at trial. *Id.* at 91.

¶36    "[R]acial discrimination in the jury selection process harms three distinct groups." *Lamon*, 262 Wis. 2d 747, ¶35.  First, "when racial discrimination infects the jury selection process," it harms the defendants.  *Id.* "Second, the rights of the excluded jurors are violated when they are denied the opportunity to serve as jurors on account of race." *Id.*  Third, society is harmed because the discriminatory practices "undermine public confidence in the fairness" of our judicial system. *Id.*

¶37    The *Batson* court expressly stated that the rule applied to every part of the jury selection process:  "While decisions of this Court have been concerned

largely with discrimination during selection of the venire, the principles announced there also forbid discrimination on account of race in selection of the petit jury." ***Batson***, 476 U.S. at 88. "Since the Fourteenth Amendment protects an accused throughout the proceedings bringing him to justice, the State may not draw up its jury lists pursuant to neutral procedures but then resort to discrimination at "other stages in the selection process[.]" ***Id.*** (citations omitted).

¶38 Wisconsin has adopted the three-step analysis established in ***Batson*** "for determining if a prosecutor's peremptory strikes violated the Equal Protection Clause." ***Lamon***, 262 Wis. 2d 747, ¶¶22, 27.

¶39 First, the defendant must establish "a prima facie case of purposeful discrimination in selection of the petit jury" and need only rely "on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." ***Batson***, 476 U.S. at 96. "[T]he defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." ***Id.*** (citation omitted). The defendant is entitled to use, as evidence, the undisputed fact that peremptory challenges can be used during jury selection as a discriminatory tactic. ***Id.*** Additionally, the defendant must show that the prosecutor's use of the strike was used "to exclude the veniremen from the petit jury on account of their race." ***Id.***

¶40 "In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances," such as "a 'pattern' of strikes against black jurors" and "the prosecutor's questions and statements during *voir dire*." ***Id.*** at 96-97. The court in ***Batson*** expressed confidence in the trial judge's experience in supervising *voir dire* and ability to determine "if the

15

circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." *Id.* at 97.

¶41 Second, once the defendant has made a prima facie case for discrimination, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Id.* While "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause," the explanation must be more than a denial of having a discriminatory motive or that the use of the strike was made in good faith. *Id.* at 98. "The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried." *Id.*

¶42 Third, the trial court "then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* At this point, the "defendant may show that the reasons proffered by the State are pretexts for racial discrimination." *Lamon*, 262 Wis. 2d 747, ¶32.

¶43 To prevail on a *Batson* challenge, the defendant must show "[p]roof of racially discriminatory intent or purpose." *Lamon*, 262 Wis. 2d 747, ¶34. It is not enough that "there is a racially discriminatory or a disparate impact" as a result of the use of a peremptory strike. *Id.*

### C. The trial court's failure to conduct the *Batson* analysis constituted clear error.

¶44 Zolliecoffer argues that "the circuit court's inquiry in response to defense counsel's assertion of a *Batson* violation during jury selection was superficially insufficient" and that it "flatly stat[ed] that defense counsel had erred by citing *Batson*[.]" The State concedes that "the circuit court declined to apply the three-step *Batson* procedure" and instead told Zolliecoffer that "he was

employing the wrong law in support of his claim." The State takes no position on the merits of the challenge because, it argues, "the record is insufficient to do so."

¶45 We agree with Zolliecoffer and the State that the trial court committed clear error when it failed to apply the correct analysis to the *Batson* challenge, which is set forth in *Lamon*. Because it rejected the defense challenge outright, the trial court did not make the findings of fact necessary to a legal ruling on the *Batson* challenge. The United States Supreme Court has made clear that "the trial court has a pivotal role in evaluating *Batson* claims" as they require "evaluation of the prosecutor's credibility," and "the demeanor" of both the prosecutor and the challenged juror. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (citation omitted). It "recognized that these determinations of credibility and demeanor lie 'peculiarly within a trial judge's province[.]'" *Id.* (citation omitted).

¶46 We therefore conclude that the trial court's failure in this case to make the needed findings constitutes clear error.

### D. Zolliecoffer is entitled to remand for a hearing on his *Batson* challenge.

¶47 Zolliecoffer argues that this court is not required by any controlling case to remand for a *Batson* hearing, and that we can, based on the record, conclude that a clear *Batson* violation occurred and remand for a new trial "consistent with other case law." He cites three cases in which a reviewing court granted a new trial based on the record notwithstanding the trial court's failure to make adequate findings of fact. In *Snyder*, the United States Supreme Court addressed a *Batson* challenge in which "the trial judge was given two explanations for the strike," defense counsel disputed both, and "[r]ather than making a specific

17

finding on the record concerning [the juror's] demeanor, the trial judge simply allowed the challenge without explanation." *Id.*, 552 U.S. at 479. The Court examined both of the proffered explanations—that the juror appeared "nervous" and that the juror had expressed concern about jury duty conflicting with his job. *Id.* at 478. The Court observed that, given the absence of a finding concerning the juror's demeanor, the trial court may have "bas[ed] his ruling completely on the second proffered justification for the strike." *Id.* at 479. The record showed that more than fifty prospective jurors had expressed concern about job conflicts. *Id.* at 480. It concluded that "In this case … the explanation given for the strike of [the juror] is by itself unconvincing and suffices for the determination that there was *Batson* error." *Snyder*, 552 U.S. at 479. *See also* **McGahee v. Alabama Dep't of Corrs.**, 560 F.3d 1252, 1270 (11th Cir. 2009) (holding that the "record … compels a finding that the State's use of a peremptory strike in this case … constituted intentional discrimination"), and **U.S. v. Alanis**, 335 F.3d 965, 969 (9th Cir. 2003) (holding that the trial court "would have concluded that the prosecutor's gender-neutral explanations were pretexts for purposeful discrimination" if it had "properly proceed[ed] to step three [of the *Batson* analysis]").

¶48 Zolliecoffer acknowledges that reviewing courts do not always grant new trials and that in other *Batson* challenge cases where insufficient factual findings have been made, appellate courts have remanded for the trial court to make the necessary findings and conclusions of law. He argues this court can conclude that a *Batson* violation occurred in light of "the straightforward nature of the issues presented and the clarity of the appellate record," and that the appropriate remedy is a new trial.

¶49   The State argues that the correct remedy for the trial court's failure to conduct the **Batson** analysis in this case is a remand with instructions to the trial court to conduct the analysis.  It points to this court's holding in **State v. Cole**, 2008 WI App 178, ¶¶43-44, 315 Wis. 2d 75, 762 N.W.2d 711, which reversed a trial court ruling denying a suppression motion on the grounds that the trial court had applied an incorrect burden of proof.  There, we concluded that we were "unable to resolve this appeal as a matter of law by applying the correct burden of proof to the record before us" and remanded for the trial court to apply the proper law. **Id.**, ¶43.

¶50   The parties both cite **Lamon** as supporting their opposing positions on the correct way for an appellate court to proceed where a trial court has failed to make factual findings necessary to a **Batson** analysis.  In **Lamon**, our supreme court affirmed a trial court's denial of a **Batson** challenge where the trial court had permitted the juror to be struck "but did not elaborate on its decision."  **Lamon**, 262 Wis. 2d 747, ¶16.

¶51   Zolliecoffer argues that the majority in **Lamon** "engaged in a searching review of the record in order to assess the adequacy of the prosecutor's explanation for his actions" despite the trial court's failure to articulate findings of fact.  The **Lamon** court concluded that "[t]he record in this case supports the circuit court's decision to allow [the prosecutor's] peremptory strike to stand." **Id.**, ¶38. Zolliecoffer argues that this means that "when the proffered reasons can be explored on the basis of the record before the [c]ourt, a remand will not be required," and a reviewing court can decide based on the record itself, even without factual findings, whether a **Batson** violation occurred.  He argues that in this case, the record shows a clear **Batson** violation, and this court should so find.

¶52    The State argues that the takeaway from *Lamon* is that even the dissenters did not grant the defendant the new trial she sought and instead would have remanded for a "proper *Batson* hearing." *See Lamon*, 262 Wis. 2d 747, ¶99 (Abrahamson, C.J., dissenting).  It focuses on the fact that the majority upheld the trial court's decision denying the defendant's *Batson* claim, and "the dissent suggested that when a trial court errs in its application of the three-step process, remand is the proper avenue."  In other words, the majority left unanswered what the remedy should be when a reviewing court concludes that the lower court has failed entirely to apply the correct framework.  Lamon had sought a new trial on the grounds that the trial court erred when it denied her *Batson* challenge.  *Lamon*, 262 Wis. 2d 747, ¶18.  However, the three dissenting justices who agreed that the trial court "made no findings of fact and reached no conclusions of law relevant to the *Batson* inquiry" concluded that "the decision in the present case *cannot be properly reviewed* and the case must be remanded" for "a proper *Batson* hearing." *Lamon*, 262 Wis. 2d 747, ¶¶99, 109-10 (Abrahamson, C.J., dissenting) (emphasis added); *Id.*, ¶¶131, 139 (Bradley, J., dissenting, joined by Sykes, J.).

¶53    We recognize that *Snyder* illustrates that where a record makes clear that a *Batson* violation has occurred, a reviewing court is not precluded from so holding.  However, in this case we address a situation in which the trial court stated to counsel that his peremptory strike challenge "is not really a *Batson* challenge."  It stated, "There is nothing, no action for the court to take."  The trial court short-circuited the creation of a record we could review.  The State did not assert the correct legal standard either although the prosecutor added that he had race-neutral reasons for the two disputed strikes.  Where the record reflects a complete failure to apply the correct law and make any findings of fact, this court cannot make a finding that Zolliecoffer has proved "racially discriminatory intent

20

or purpose" by the State, and such a finding is necessary to sustain a *Batson* challenge. *See Lamon*, 262 Wis. 2d 747, ¶34.

¶54     While the writings of the dissenting justices in *Lamon* are not precedential, it is notable that the justices who agreed that the trial court had erred by failing to conduct the analysis did *not* therefore conclude that the record proved a *Batson* violation and warranted a new trial. The *Lamon* majority addressed a different question and did not address what a court should do in the event that it concluded, as we do, that the trial court had erred by failing entirely to conduct the *Batson* analysis.

¶55     We remand to the trial court with instructions to make the necessary findings of fact and rule on whether a *Batson* violation occurred during the petit jury selection. *See id.*, 476 U.S. at 88 ("While decisions of this Court have been concerned largely with discrimination during selection of the venire, the principles announced there also forbid discrimination on account of race in selection of the petit jury."). If the trial court determines that a *Batson* violation occurred, it shall vacate Zolliecoffer's conviction and grant a new trial. If the trial court determines that there was no *Batson* violation, the judgment of conviction will stand.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

Not recommended for publication in the official reports.

21